YARRUT, Judge.
Defendants have appealed from the solidary judgment of the District Court awarding Plaintiff $2,361.54 damages sustained in an automobile accident, $2,000.00 for pain and suffering, $315.00' for medical expenses, and $46.54 for automobile property damage. Plaintiff sought judgment for $41,265.00, itemized as follows:
$20,000.00 “Pain and suffering (past, present and future)
10,000.00 “Mental anguish (past, present and future)
10,000.00 “Permanent disability (physical and mental)
175.00 “Dr. Blaise Salatich
40.00 “Drs. Duhe and Garcia (X-rays)
50.00 “Automobile repairs ($50.00 deductible)
1,000.00 “Future Medical expenses
$41,265.00” “Total
There is no issue of liability, which is conceded, only that of quantum. Plaintiff did not answer the appeal.
On or about 2:00 P.M. on February 11, 1961, Plaintiff was sitting in his stopped automobile on the Airline Highway. Immediately to his rear a young lady was stopped in her Cadillac automobile. An automobile operated by Defendant-Kerner struck the rear of the Cadillac, forcing it forward to strike the rear of Plaintiff’s Plymouth.
As a result of this contact, Plaintiff claims to have suffered personal injuries diagnosed by his doctor (Dr. Blaise Sala-tich) as:
“1. Whiplash neck injury involving peri-articular, capsular, ligamentous and musculo-fascial structures cervical vertebrae, subsiding.
“2. Whiplash low back injury involving ligamentous and musculo-fas-cial structures lumbo sacral region, subsiding.”
Dr. Salatich testified for Plaintiff and Dr. Arthur L. Brooks of Ochsner Clinic, for Defendants, both orthopedists.
To better understand the cause and extent of Plaintiff’s injuries, the young lady driving the Cadillac behind Plaintiff (age 32), which was bumped from the rear first, and in turn bumped Plaintiff’s car, testified that neither she (age 20), her brother (age 13), or her grandmother, in the automobile with her, was injured. In addition, she testified that Plaintiff made no complaint of injury at the scene of the accident.
Plaintiff testified he went from the scene of the accident to work; performed liis usual tasks; that he did not consult a *629 doctor until approximately March 7, 1961; continued his weekly bowling contests; and drove his automobile to and from work; that he went to see Dr. Salatich at the suggestion and per appointment made by his attorney; that he had medical expense insurance, yet did not seek medical attention until his attorney recommended Dr. Salatich, nearly a month after the accident. When asked why he continued to bowl after the accident, Plaintiff said, “It was my recreation and hobby and something I enjoyed and I belong to this team.” As a member of a team, he continued his normal weekly bowling schedule, uninterrupted by reason of any injury received as a result of the accident.
Dr. Salatich diagnosed Plaintiff’s condition as:
“1. Tightness (muscle spasm) in cervical region.
“2. Loss of normal rate and flexibility of cervical spine.
“3. Loss of normal rate and flexibility of lumbo sacral area.
“4. Rotation of head to right limited.
“5. Tenderness left posterior and lateral mid and lower cervical regions.
“6. Deep soreness over supra spinous masculature, more pronounced on left side.
“7. Tenderness and muscle tightness (spasm) lumbo sacral region — more outstanding on left.
“8. Loss of gripping and grasping strength in left hand.
“9. Hypasthesia left mid and lower posterior and lateral cervical region and supra spinous region.”
Dr. Salatich testified that, subsequent to the accident, Plaintiff “continued to work but on a restricted basis, not performing any unduly imposing and laborious physical activities;” and that Plaintiff was advised “to restrict unduly imposing and exerting physical activities and occupational duties as much as possible.” Dr. Salatich’s testimony indicated symptoms indicative of a person totally incapacitated, yet Plaintiff was confessedly not incapacitated; was not seriously injured; lost no time from work; did not seek medical attention until approximately one month after the minor accident involved; and continued his weekly bowling schedule; was not hospitalized and required no braces or other equipment.
Dr. Salatich said he discharged Plaintiff June 27,1961, because further medical treatment would be of no avail; while Plaintiff testified he decided not to go for further treatment because it was inconvenient to see the doctor and because he felt he was well.
On the other hand, for Defendants, Dr. Brooks’ diagnosis was that of “a mild problem in the neck and lumbar spine of a ligamentoiis nature ” per examination made on April 2, 1962, one day prior to the pretrial evaluation made by Dr. Salatich. In this examtination Dr. Brooks found no objective evidence of serious injury and no functional disability.
From the nature of the accident, the fact that Plaintiff pursued his vocation and avocation, without interruption, was not hospitalized, had to wear no surgical brace, and voluntarily terminated his treatment because he felt he was well, we can reach no conclusion other than he suffered the mildest of a whiplash injury, compensable by $1000.00 under the decision and authorities cited in Koenig v. Black, La.App., 147 So.2d 224.
Regarding medical, doctor and automobile repair claims: The amount awarded for automobile damage is not disputed; bills for X-rays made by Drs. Duhe and Garcia in the amount of $40.00 are alleged by Appellant to have been costs incurred by Plaintiff in preparation for the trial of this case, rather than in treatment, and are challenged as an element of damage. Likewise, Appellants dispute a bill of $85.00 from Dr. Salatich, contending that the award *630 for medical expenses should be reduced to $190.00, and the injuries for pain and suffering to $250.00.
The record shows that the second set of X-rays were made for Dr. Salatich in his examination of Plaintiff on April 3, 1962, less than a week before trial. Dr. Salatich admitted his last treatment of Plaintiff was on June 27, 1961, when he had told him that “I thought he had received maximum treatment, but he was not completely discharged.” Plaintiff, in response to the question, “Were you discharged around July 1, 1961 by Dr. Sala-tich,” replied, “No. I work shift work and I could not make the time over there, and I was feeling a little better so I stopped going.”
 Thus, it appears that Plaintiff was not completely discharged from his doctor’s care. The bill of $85.00 from Dr. Salatich on the April 3, 1962 visit, however, was for evaluation and report of X-rays. Plaintiff is entitled to recover no medical expenses incurred in the preparation for trial. Here, the nature of the services rendered and their proximity to the date of trial, as shown by the record, clearly show the X-ray charge and the evaluation and report by Dr. Salatich to be expenses of preparation for trial, and not items of damage. McDaniel v. Audubon Insurance Company, La.App., 121 So.2d 531; Noland v. Liberty Mutual Insurance Company, La.App., 96 So.2d 360; Moncrieff v. Lacobie, La.App., 89 So.2d 471.
The award for medical expenses is accordingly reduced to $190.00.
For the above and foregoing reasons, the judgment of the District Court is amended to award Plaintiff $1000.00 for pain and suffering, $190.00 for medical expenses, and $46.54 automobile damage; costs in the District Court to be paid by Defendants, and costs on appeal to be paid by Plaintiff; otherwise the judgment is affirmed.
Judgment amended and affirmed.