REGAN, Judge.
Plaintiffs, Irwin Talbot and his daughter, Rosalie Talbot, who was a guest passenger in the vehicle driven by her father, instituted this suit against the defendants, Eula Eusea, and her liability insurer, United States Casualty Company, endeavoring to recover the respective sums of $12,255.00 and $16,248.02 for personal injuries, medical expenses and property damage which they incurred as a result of a collision in U. S. Highway 90, due, they asserted, to the defendant’s negligence in driving her *533 automobile into the path of plaintiff’s vehicle which was moving in its proper lane of traffic.
The defendants answered and denied the existence of any negligence on the part of Eusea, and asserted that the proximate cause of the accident was the operation of plaintiff’s vehicle at an excessive rate of speed in a 35 mile per hour zone, which resulted in a collision when the defendant endeavored to execute a left turn.
In the alternative they pleaded the contributory negligence of the plaintiff, or that he possessed the last clear chance to avoid the accident.
From a judgment awarding plaintiff, Rosalie Talbot, the sum of $2,818.36 and dismissing plaintiff, Irwin Talbot’s suit, both have appealed. The defendants have answered the appeal, insisting that both suits should have been dismissed, or alternatively, that the award to the guest passenger was excessive and therefore should be reduced.
The record reveals that the accident occurred at 6:40 p. m. on October 31, 1960 in U. S. Highway 90 in Paradis, La. At this point the highway is an undivided two lane roadway, and on either side thereof a narrow shell shoulder exists. The posted speed limit is 35 miles per hour.
Plaintiff testified that prior to the accident he was driving his vehicle, at a speed of between 30 and 35 miles per hour, away from Raceland, La., and toward New Orleans. Traffic moving in both directions, that is, west toward Raceland, and east toward New Orleans was extremely congested. When he approached Hebert’s Restaurant, which is located next to the highway to his left, he first noticed the defendant’s car, which was stopped in an area between four to ten feet removed from the westbound lane of traffic. Simultaneously, a line of nine or ten vehicles was passing plaintiff in the opposite lane and moving in a westerly direction or toward Raceland. When the last vehicle in this line had passed, the defendant drove into the westbound lane of traffic slowly, ultimately crossing the center line without warning and into the path of plaintiff’s car as it moved in an easterly direction. The diagram which was drawn by the plaintiff depicting defendant’s entrance into the highway reveals that she entered on an angle, which would normally indicate an intent to drive in a westerly direction.
The defendant, on the other hand, denied that she had stopped near Hebert’s Restaurant on the shoulder of the roadway. Her story is that prior to the accident, she was driving in Highway 90 toward Raceland. Since she intended to execute a left turn at the point where the accident occurred, she turned on her left mechanical signal blinker light and decelerated. She did not stop before initiating the turn into plaintiff’s lane since she observed his vehicle which, she laboriously insists, was one half block removed from her when she crossed the center line and collided with the plaintiff’s car. The defendant admitted that she had “three or four” bottles of beer prior to the accident.
Cheva Romano, a state trooper who conducted an investigation of the accident, arrived 30 minutes thereafter. He testified that the front left section of the defendant’s car collided with the front left portion of plaintiff’s vehicle. He explained that plaintiff’s vehicle was stopped in the eastbound lane, while the defendant’s car was straddling the center line of the highway and a portion thereof extended into the plaintiff’s lane of traffic. He emphasized that the defendant was staggering around at the scene of the accident, barely able to stand up, smelling of alcohol and mumbling incoherently.
Photographs, taken of both cars, reveal that the point of impact was at the left front of each vehicle.
Predicated on the foregoing testimony, the trial judge concluded that this accident resulted from the concurrent negligence of *534 both drivers, and in his written reasons for judgment he stated in part:
“Firstly, defendant was negligent in her left turn and this negligence was a proximate cause of the accident, R.S. 32:235: Washington Fire & Marine Ins. Co. v. Fireman’s Ins. Co., 232 La. 379, 94 So.2d 295.
“Secondly, the plaintiff-driver was negligent. The heavy damage to the vehicles belies the 30-35 mile speed. The rather novel look-out that had plaintiff-driver watching a vehicle off the far side of the road and a few hundred feet on-to his left front in a maze of what he termed heavy traffic is, at the least, unusual and not conducive to that proper look-out for forward vehicles on the traffic lanes: This coupled with his testimony that the selfsame vehicle crossed the two lanes and hit him—again in heavy traffic—leads this Court to but one conclusion: Plaintiff driver, busily engaged in watching off-road traffic, failed to see the slowed vehicle of defendant, failed to see the blinking indicator, and suddenly found a vehicle directly in his path. His negligence was a proximate cause of the accident: * *
We are in full accord with the conclusion reached by the trial judge with respect to the defendant’s negligence since she failed to exercise that standard or degree of care which the law imposes upon a motorist who contemplates the execution of a left turn.[1]
On the other hand, we are not in accord with the trial court’s finding that the plaintiff driver was guilty of negligence. The evidence adduced on the trial hereof completely refutes this conclusion; therefore, this factual finding is manifestly erroneous.
Contributory negligence is an affirmative defense, which must be established by a preponderance of the evidence and by the defendant who pleads it, unless, of course, the plaintiff’s own testimony convicts him thereof.[2]
Paradoxically the trial court reasoned that since the plaintiff was engaged in watching the movements of the defendant’s vehicle before it entered the roadway, he was not looking ahead so as to maintain that degree of care which the law imposes upon a motorist, and in consequence thereof, he subsequently failed to notice the defendant’s manifestation of her intention to execute a left turn across the path of plaintiff’s vehicle, and this constituted negligence on his part.
The record reveals that the defendant’s vehicle moved into the roadway on such an angle that would reasonably convey the impression to an approaching motorist that she fully intended to drive in the traffic-lane reserved for westbound traffic. It was only after she drove across the center line of the roadway that the danger became apparent, and at this moment the plaintiff did not possess sufficient time to avoid the collision. The record is devoid of any evidence which would tend to prove that the plaintiff was driving in excess of the speed limit.
In order to reason that the defendant was. not under the influence of liquor and that she related a more credible account of the accident than did the plaintiff, we would have to ignore the very convincing testimony of the state trooper, whose accurate description of defendant’s conduct following the accident, leads us to the inevitable conclusion of intoxication. The trial judge justified her unusual behavior by relating-the cause thereof to the collision; however, we think the staggering, the odor of alcohol, and her own admission to having consumed three or four beers, together with-. *535 the irrational manner in which the accident occurred, supports the finding that she was intoxicated. This, of course, in our opinion, accounts for the fact that she was unable to accurately recall the details of the accident.
Plaintiff’s version thereof, on the other hand, is fully corroborated both by the physical damage to the vehicles and their respective positions after the impact.
Since the damage to both vehicles is to the left side, it is more reasonable to believe that the defendant’s vehicle crossed the center line in the manner related by the plaintiff. But assuming arguendo that we accept the defendant’s version thereof, it would appear from the physical damage that she had just crossed the center line in her endeavor to execute a left turn when the vehicles collided. Even under these circumstances, her negligence would have been the proximate cause of the accident.
Defendants argue that Rosalie Talbot, plaintiff’s guest passenger, was not questioned about the accident itself but merely about her injuries; therefore, the presumption is that her testimony would have been adverse as it would have related to the cause of the accident.
 In view of the physical damage to the vehicles, which we 'are convinced supports the plaintiff driver’s testimony, we are of the opinion that this presumption alone is insufficient to affirmatively establish his contributory negligence.
In view of what we have said herein-above, we are of the opinion that the trial court erred in dismissing Irwin Talbot’s suit.
Turning our attention to a consideration of quantum, counsel for the defendants insists that an award of $2,000 to plaintiff, Rosalie Talbot, was excessive. The record reveals that as a result of the accident she incurred a fracture of the lateral plateau of the tibia, which confined her to bed for a period of two weeks and to a wheel chair for another month thereafter. Four months after the injury, Dr. R. C. Grunsten stated in a medical report that she had a limitation in the knee of 10 degrees flexion, which, he prognosticated, would correct itself in approximately ten weeks. In addition thereto, when the trial hereof occurred, she had several scars on her face which resulted from lacerations incurred in the collision. The record does not reflect the severity of these scars; however, plaintiff is a woman 21 years of age and there is no doubt that the scars, to some extent, mar her appearance. Under these circumstances, we are of the opinion that the award of $2,000 is neither inadequate nor excessive.
Prior to the accident, plaintiff was employed as a cashier at a National Food Store where she earned $50 per week, and which occupation required her to stand on her feet for long periods of time. It is stipulated that she did not work for 19 weeks after the accident; however, the trial judge reasoned that the plaintiff could have returned to work in 16 weeks. The record is likewise devoid of any evidence which could support this conclusion, and the trial court should have awarded her $950 for loss of wages.
There were other special damages which plaintiff asserted that she was entitled to recover; however, not all were proved with that certainty required by law.
The trial court allowed plaintiff $5.00 for medical expenses, which was established by testimony and an invoice, and $12.36 for rental of a wheel chair. These awards are correct, but in addition thereto, the record reveals uncontradicted testimony to the effect that the plaintiff incurred these other special damages:
Drugs 3.09
Additional medical 88.00
Ambulance transportation 96.00
187.09
*536 Therefore, we are of the opinion that the award to Rosalia Talbot should be increased from $2,818.36 to $3,154.45.
With respect to Irwin Talbot, the medical evidence discloses that he incurred either a sprain of the right foot or a minimal fracture. Plaintiff was employed as a barber, and he only lost several days work as a result of this accident. The medical reports introduced in evidence establish that he suffered no permanent disability as a result of his injury. This is evidenced by the fact that he was able to stand on his feet and to work as a barber for long periods immediately following the accident. Therefore, we are of the opinion that an award of $750 is adequate to compensate plaintiff for his pain and suffering. In addition to the foregoing, the plaintiff incurred proven medical expenses of $180, for which he is entitled to be reimbursed. Also at his doctor’s suggestion he purchased two pairs of special shoes at a cost of $54.28. Plaintiff further sought reimbursement for a bill rendered by Drs. Battalora & Pollingue; however, the record reflects that this bill was incurred only for the purpose of obtaining a medical report to be used in conjunction with this litigation. Therefore, defendants are not responsible for the payment of this bill.[3]
It was stipulated by both litigants that plaintiff’s vehicle was damaged to the extent of $805.77 as a result of the accident; however, plaintiff seeks to recover for the full value of the vehicle because it was destroyed by fire shortly after the collision when the repair shop in which it was parked burned. This position is obviously without merit since the defendants are only liable for damage which resulted from the collision. Therefore, plaintiff is entitled to recover $805.77 property damage.
For the reasons assigned, the judgment appealed from is affirmed with respect to its finding the defendant driver negligent, reversed insofar as it dismissed Irwin Talbot’s suit, and amended to increase the award to Rosalie Talbot.
It is therefore ordered that there be judgment in favor of Rosalie Talbot and against Eula Eusea and United States Casualty Company, in solido, in the sum of $3,154.45.
It is further ordered that there be judgment in favor of Irwin Talbot and against the defendants, Eula Eusea and United States Casualty Company, in solido, in the sum of $1790.05.
Defendants are to pay all costs.
Affirmed in part; reversed in part; and rendered.

. LSA-R.S. 32:235; Washington Fire & Marine Ins. Co. v. Fireman’s Ins. Co., 232 La. 379, 94 So.2d 295.

. Alderman v. Henderson, La.App., 130 So.2d 157.

. McCrory v. Great American Indemnity Co., La.App., 92 So.2d 742.