164 So.2d 666 (1964)
Rena Catherine ZENO, Plaintiff and Appellant,
v.
David BREAUX and Travelers Indemnity Company, Defendants and Appellees.
No. 1160.
Court of Appeal of Louisiana, Third Circuit.
May 28, 1964.
Rehearing Denied June 17, 1964.
*667 Simon & Trice, by Phil Trice, Lafayette, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe, by Timothy J. McNamara, Lafayette, for defendant-appellee.
Before TATE, SAVOY and HOOD, JJ.
HOOD, Judge.
This is a damage suit instituted by Rena Catherine Zeno in which plaintiff alleges that she sustained personal injuries when the automobile in which she was riding as a passenger was struck from the rear by a car being driven by David Breaux. The suit was instituted against Breaux and his insurer, Travelers Indemnity Company. The case was tried by a jury and resulted in a verdict in favor of defendants. Pursuant to that verdict, judgment was rendered rejecting plaintiff's demands, and plaintiff has appealed.
The accident occurred about 9:30 p.m. on August 28, 1961, at the intersection of Coolidge and Jefferson Streets in the city of Lafayette, Louisiana. Jefferson Street is the right-of-way or preferred street, and stop signs are located at this intersection warning motorists on Coolidge Street to stop before entering or proceeding to cross the preferred thoroughfare. Both of these streets are hard-surfaced, but it was raining slightly and the streets were wet at the intersection when the collision occurred.
Immediately prior to the accident, plaintiff was riding as a passenger on the front seat of an automobile which was being driven in a northerly direction on Coolidge Street by her brother, Edward Zeno. When the Zeno car reached the intersection of Coolidge and Jefferson Streets, it came to a stop in compliance with the stop sign, and shortly thereafter it was struck in the rear by the Breaux automobile, which vehicle at that time was being driven in a northerly direction on Coolidge Street behind the Zeno car.
Plaintiff, Edward Zeno and one of the other passengers in that car testified that the car in which plaintiff was riding came *668 to a normal stop about even with the stop sign at that intersection, and that the collision occurred while they were stopped in that position. Defendant Breaux, on the other hand, testified that the Zeno car came to a "quick" stop as it reached the intersection, that it then started up again as though the driver intended to proceed across Jefferson Street, but that after traveling a distance of not more than the length of the car Zeno again brought his car to a sudden stop. Breaux testified that he was 45 to 50 feet behind the Zeno car when he first observed that the driver intended to stop at the intersection, and that Breaux then applied his brakes and reduced the speed of his car. He stated that he was traveling at a speed of six or seven miles per hour when Zeno started his car up again after its initial stop, and that he was 12 or 15 feet behind the lead car still traveling six or seven miles per hour, when Zeno stopped suddenly the second time. Breaux testified that he applied his brakes immediately when he saw that Zeno intended to make the second stop, but that the wheels of his car struck a puddle of water in the street causing his car to skid and to collide with the rear end of the Zeno car. The impact between the two vehicles was very slight. Both cars came to a stop almost at the point of impact, and little, if any, damage was done to either vehicle.
Under these facts, plaintiff contends that defendant Bureaux was negligent and that his negligence was a proximate cause of the accident. Defendants contend that Breaux was free from fault, and that the sole proximate cause of the accident was Zeno's negligence in suddenly stopping his car a second time, without any warning, after having made an initial stop for and then proceeding into the intersection.
Since a verdict was rendered in favor of defendants, we assume that the jury accepted Breaux's version of how the accident occurred and concluded that under those facts Breaux was not negligent.
The law imposes upon a motorist the duty of following a preceding vehicle at a safe distance. As a general rule, therefore, when a following vehicle collides with the rear of the lead car, the following driver is considered to be at fault. An exception to this general rule of law has been recognized, however, in instances where the driver of the lead vehicle negligently creates a hazard which the following vehicle cannot reasonably avoid. LSA-R.S. 32:81; Emmco Insurance Company v. St. Lawrence, La.App., 4 Cir., 127 So.2d 202; and Dykes v. Lowrance, La.App. 3 Cir., 146 So.2d 171.
The rule as stated in Adams v. Morgan, La.App. 4 Cir., 173 So. 540, is:
"The best and safest rule which it seems possible for the governing authorities and the courts to have formulated is the one which requires the driver of the car following another to maintain such speed and such distance from the lead car as to be able to meet the usual and ordinary movements of a car using the highway. * * * Whilst he is expected to be prudent in following another, the driver of the car in the rear can anticipate a reasonable observance of the rules of the road and of driving, by the driver of the car ahead of him. * * *" (173 So. 542).
Defendants contend that the general rule is not applicable here because the driver of the lead car in this case negligently created a hazard which defendant Breaux, the driver of the following vehicle, could not avoid. To support that argument, they refer us to the cases of McNeely v. United States Fidelity & Guaranty Co., La.App. 2 Cir., 69 So.2d 600; Reeves v. Caillouet, La.App. 1 Cir., 46 So.2d 373; Nomey v. Great American Indemnity Company, La.App. 2 Cir., 121 So.2d 763; and Tatum v. Travelers Insurance Company, La.App. 2 Cir., 155 So.2d 56 (Cert. denied).
*669 The Reeves, Nomey, and Tatum cases are not applicable here because in each of those cases the accident occurred on open highways where vehicles customarily are driven at high rates of speed, and the driver of a following car has a right to assume that the driver of the lead car will reasonably observe the rules of the road and will not bring his car to a sudden and unnecessary stop, without prior warning. In the instant suit, unlike any of the cited cases, the collision occurred at an intersection of heavily traveled city streets, which intersection was controlled by stop signs requiring both the lead and the following vehicle to stop, and at which intersection the following driver should have anticipated that the lead driver may have to make further stops before completing his crossing maneuver. In the McNeely case the collision occurred at or near a street intersection in a municipality, but there the court specifically found that both cars were on the right-of-way street and that there was no reason for the driver of the following vehicle to anticipate that the lead car would be brought to a sudden and unsignaled stop.
The facts in this case are almost parallel to those presented in Dykes v. Lowrance, supra, where the driver of the lead vehicle stopped for a red traffic light, started his car forward after the light turned green, and then suddenly stopped again causing the following vehicle to strike the rear of his car. Under those circumstances we held that the drivers of both vehicles were negligent.
In our opinion the general rule should be applied in the instant suit. The evidence shows that traffic was heavy at the intersection where this accident occurred. Defendant Breaux testified that immediately before the collision occurred the driver of a vehicle on Jefferson Street, the preferred thoroughfare, had indicated as he approached this intersection that he intended to turn, but then apparently changed his plans and proceeded to go straight and to enter the crossing directly in front of the Zeno car. According to Breaux's testimony, therefore, it was necessary for Zeno to make the second stop after starting to enter the intersection in order to avoid colliding with a car on the preferred street.
Considering the circumstances and the nature of this intersection, we think Breaux was bound to anticipate that the lead vehicle might be required to stop because of intersecting traffic on the preferred street, and that it was Breaux's duty to keep at such a distance and to maintain such a lookout and such control of his automobile as to enable him to stop without striking the vehicle ahead in the event of such an emergency. We conclude, therefore, that Breaux was negligent and that his negligence was a proximate cause of the accident. In our opinion the jury erred in concluding that Breaux was not negligent and in returning a verdict for defendants.
Although the two vehicles collided with very little force, the blow was sufficient to cause plaintiff to slide off the front seat onto the floor of the automobile in which she was riding. She testified that she immediately experienced pain in her back and neck, and that because of this pain she was unable to return to her employment the next day. She consulted Dr. Robert Kapsinow, a general practitioner, on August 30, and he treated her until December 5, 1961, at which time he discharged her. Dr. Kapsinow was not called as a witness, so the record does not declare what his findings were or what diagnosis he made. According to plaintiff's testimony however, she was hospitalized from August 30 to September 14, 1961, and during six days of that period she was placed in traction.
During the month of October, 1961, while plaintiff was being treated by Dr. Kapsinow, she also was examined by two orthopedic surgeons and by a general surgeon.
*670 The general surgeon could find no evidence of any injury or disability of any kind. One of the orthopedists found no injury to her neck, but he did feel that she "most likely had a subsiding lumbosacral strain" from which "she should recover in a few weeks." The other orthopedist concluded that plaintiff had sustained a whiplash type injury as a result of the accident, and that the injury explained and justified her complaints of pain in her neck and back, blurred vision, headaches, and weakness in her arms and legs. Finally, plaintiff was treated by a general practitioner from December 29, 1961, until February 27, 1962, when plaintiff was discharged as being fully recovered. This treating physician testified that he found only "a minimal spasm," and he diagnosed her condition as "a simple strain" of her neck and back muscles. The treatment administered by him consisted of vibration treatments and the prescription of muscle relaxant drugs.
Plaintiff complains that at the present time she still suffers from pain in her neck and back, weakness in both legs, weakness in her right arm and hand, headaches, dizziness, and blurred vision. She concedes, however, that on March 17, 1962, she obtained employment in a bowling alley and continued to work there for some time, and that while so employed she frequently engaged in bowling activities herself without difficulty.
The evidence also shows that plaintiff was involved in another automobile accident in April, 1961, about four months before the accident which precipitated this suit occurred. At that time an automobile which plaintiff was driving was struck with great force by another car, and plaintiff was hospitalized for eight days following that accident. A suit arising out of that first accident was filed against plaintiff, and then on August 24, 1961, or just four days before the present accident occurred, plaintiff filed a reconventional demand in that suit alleging that she received "bruises and mental and physical shock and was confined to Charity Hospital for eight days" as a result of the April, 1961, accident, and for these injuries she demanded damages which included a claim of $2,000.00 for pain and suffering. Also, the evidence shows that about three or four days before August 28, 1961, plaintiff complained to her supervisor at the place where she worked that she could not clean the lower part of a table because "her back hurt her." Plaintiff now testifies, however, that she was not injured as a result of the earlier collision, and that she had never experienced any pain in her back prior to the date of the last accident.
Defendants deny that plaintiff suffered any injury at all as a result of the August 28 accident. They argue alternatively, and in the event it is determined that any of her complaints of pain or disability are genuine, that these injuries were caused by the earlier accident and not by the one which gave rise to this suit. It is true that plaintiff's allegation in the earlier suit that she was injured in the April, 1961, accident, and her later contradictory statements that she was not injured in that accident, causes us to view all of her testimony with some suspicion. It may be, as suggested by counsel for defendants, that the jury rejected plaintiff's demands for damages because the jurors were unwilling to believe her testimony. We note, however, that in the pleading which she filed in the earlier suit she did not allege that she had injured her neck or back, as in the present suit, and her failure to allege that type of injury in that pleading is some indication that she actually did not injure those parts of her body in that accident. Also, the evidence shows that she was able to work and to perform the duties of a waitress after the first accident occurred and immediately prior to the date of the last accident. After considering all of the evidence, therefore, we conclude that plaintiff did sustain some injuries to her neck and back as a result of the August 28, 1961, accident, for which she is entitled to recover.
Our review of the evidence convinces us that the injury which plaintiff sustained as *671 a result of the last accident was of a relatively minor nature and that she fully recovered from all of her injuries by February 27, 1962, or within six months after the accident occurred. We further are convinced that the symptoms which plaintiff experienced after December 5, 1961, were of such a minimal nature that they did not disable her from working from and after that date. In our opinion an award of $1,000.00 is fair and adequate for her pain and suffering. See Hernandez v. State Farm Mutual Automobile Insurance Company, La.App. 3 Cir., 128 So.2d 833; McCastle v. Stewart & Stevenson Truck Co., La.App. 1 Cir., 147 So.2d 678; and Dyer v. Stephens Buick Co., La.App. 4 Cir., 125 So.2d 185.
Plaintiff also is entitled to recover the medical expenses which she incurred in connection with the treatment of her injuries. The evidence shows that she incurred the following medical bills:

 Lady of Lourdes Hospital____ $248.85
 Dr. Robert Kapsinow_________ 200.00
 Dr. Richard Saloom__________ 150.00
 St. Ann Infirmary___________ 125.00
 Jefferson Drug Store________ 18.04
 Total______ $741.89

At the time of the accident plaintiff was employed as a waitress at the Piccodilly Cafeteria in Lafayette, at a salary of $18.00 per week. She states that in addition to her salary she received an average of $17.00 per week in tips. Another waitress employed at the same time in the same cafeteria, however, testified that her tips amounted to an average of only $3.00 per week. We think the lower figure is the more accurate estimate, and accordingly, we conclude that plaintiff's earnings in her employment, including salary and tips, amounted to an average of $21.00 per week. As a result of her injuries she was unable to work from August 28 until December 5, 1961, or a total of about 14 weeks, and thus she is entitled to recover the sum of $294.00 for loss of wages.
According to our figures therefore, plaintiff is entitled to recover $1,000.00 for pain and suffering, $741.89 for medical expenses, and $294.00 for loss of wages, all of which amounts to the aggregate sum of $2,035.89.
For the reasons herein set out the verdict of the jury and the judgment of the trial court is reversed, and it is ordered, adjudged and decreed that judgment be rendered herein in favor of plaintiff, Rena Catherine Zeno, and against David Breaux and Travelers Indemnity Company, in solido, for the sum of $2,035.89, with interest at the rate of 5 percent per annum from date of judicial demand until paid, and for all costs of this suit.
The costs of this appeal are assessed to defendants-appellees.
Reversed and rendered.

On Application for Rehearing.
En Banc. Rehearing denied.