SAMUEL, Judge.
This is a suit for personal injuries and property damage incurred in a rear-end collision between two automobiles. Plaintiffs are husband and wife. Individually, he sues for property and other special damages and his own injuries; for the use and benefit of his minor son, he seeks damages for the injuries suffered by the child. She seeks damages for her personal injuries. The sole defendant is the liability insurer of the other car involved.
There was judgment in the trial court in favor of the plaintiffs and against the defendant, awarding: (1) the husband, individually, the lump sum of $4,501.51, which is not itemized but which, as we understand it, consists of $3,000 for his injuries and $1,501.51 for such special damages as medical and drug expenses, property damage to his automobile and loss of earnings; (2) the plaintiff husband, for the use and benefit of the minor, the sum of $50 for the child’s injuries; and (3) the wife the sum of $1,500 for her injuries. Defendant has appealed therefrom.
In this court defendant concedes liability and makes only two contentions: (1) the awards for .personal injuries to both the husband and the wife are excessive; and (2) the trial court erred in including in its award for special damages the sum of $50 for two medical reports rendered by a physician.
As to quantum, the record contains the testimony of the two plaintiffs, Mr. and Mrs. Alexander, their treating physician, Dr. Carl H. Rabin, a specialist in internal medicine, and the reports of Dr. H. R. So-boloff, an orthopedic surgeon who examined Mr. Alexander on referral from the *104 treating physician, and Dr. Irving Redler, an orthopedic surgeon who examined both plaintiffs on behalf of the defendant. The medical reports were received in evidence by stipulation.
At the time of the accident Mr. Alexander was 30 years of age and employed as an electrician. He had been in the driver’s seat and had stopped for traffic when the car was struck from behind. The impact broke the automobile seat, his head snapped backward and forward and his left shoulder apparently struck the door. Pie suffered pain in the area of his neck and left shoulder. The accident happened on a Saturday night. He kept a heating pad on his neck and remained in bed at home for the remainder of the night and through the following day. On Monday he went to work but the continuing pain emanating from his neck and shoulder was so severe he left work and went to a hospital where, after examination, he was referred to his private physician. He saw Dr. Rabin the next day and was treated by that physician for five weeks during which time he was required to wear a cervical brace. On the advice of Dr. Rabin he did not return to work until six weeks after the accident. He was unable to do strenuous work upon his return and his employer gave him light duties in the office. At the time of his discharge by Dr. Rabin he was still suffering pain and continued to do so for an overall period of four months.
In connection with Mr. Alexander’s injuries, Dr. Rabin testified as follows: He saw and treated Mr. Alexander for the five week period and made one additional examination the day before trial. In his opinion plaintiff had suffered an acute cervical sprain and a strain of the left shoulder. He found objective evidence of plaintiff’s complaints in the form of muscle spasm and tenderness in the neck and back on both sides, to the left scalene zone on the side, and both trapezoids in the back. His mobility was decreased and was also limited in the left shoulder. There was tenderness over the cervical and upper dorsal spine. X-rays taken at the time were negative. His treatment consisted of therapy, muscle relaxants, analgesics and the use of the Thomas collar. He ws advised to discontinue work. During the course of the treatment he was referred to Dr. Soboloff for examination. Use of the Thomas collar was discontinued after the five week period. At the time of Mr. Alexander’s discharge this physician was of the opinion that his patient continued to suffer pain and discomfort but that the same would diminish. Dr. Rabin’s last examination of Mr. Alexander on the day before the trial (approximately 15 months after the accident) revealed no evidence of residual disability.
Dr. Soboloff’s examination of Mr. Alexander was made approximately three weeks after the accident. As shown by his report, the examination revealed a bilateral trapezial tightness, but no spasm, at a forward flection of 25-30°; in attempted hy-perextension of the neck there was a left trapezial spasm and tightness which occurred at no more than 10-15°; left rotation was limited at 30° and right at 60° with trapezial spasm and tightness occurring at the extremes of motion. This physician was of the opinion that Mr. Alexander had sustained injuries to the neck and left trapezial region and that there was evidence of an acute cervical strain involving the left side predominantly but, to some extent, the right side as well. He believed the patient should continue the therapy but should begin to discard the use of the cervical brace gradually during the next several weeks so that he could accomplish a better range of motion, and that he would need one to three months more of therapy before full recovery.
Mrs. Alexander, who was 26 years of age at the time of the accident, testified: She had occupied the front seat with her husband and child, the latter being in the middle. The impact caused her to strike her arm and right shoulder on the partition between the front and back doors of the car. She suffered pain and was unable to sleep that night because of both pain and nervousness. When she awoke in the morn *105 ing her neck was stiff and she had trouble swallowing. She called a doctor the next day, Sunday, who prescribed medication, was unable to obtain an appointment with that doctor on Monday and saw Dr. Rabin with her husband on Tuesday. She was treated by Dr. Rabin for the same length of time as her husband, five weeks. At the time of discharge she was not free of pain, which had been severe initially but which subsided after two or three months. She was also examined by Dr. Rabin the day before the trial and at that time had no complaints other than some minor soreness when the weather was damp.
Dr. Rabin first examined Mrs. Alexander on July IS, 1964, at which time she complained of immediate pain in the back of her right shoulder and at the lower edge of the right scapular and nausea following the accident. Her neck was stiff in the back and on both sides and she had pain swallowing and talking, occipital headaches and vertigo, especially on bending. Treatment consisted of muscle relaxants and analgesics. X-rays were taken on the initial visit which showed no fractures but did show limitation of mobility, corroborating his clinical diagnosis of Mrs. Alexander’s condition. On the date of discharge she was complaining of occasional pain on the right side of her neck, and examination revealed mild tightness of the right trape-zius at the extremes of right lateral bending and rotation. He felt justified in discharging her on August 17, because he felt it was not unusual for soft tissue injuries to presist for some period of time and she had complained to him that it was difficult for her to go to his office for treatment because she lived so far away. At the time of discharge Dr. Rabin felt her remaining symptoms would resolve themselves in the next few weeks.
Dr. Redler’s reports show he examined Mr. and Mrs. Alexander approximately six and one-half months after the accident and that in his opinion those orthopedic examinations, physical and x-ray, did not reveal any objective evidence of residual disability on the part of either plaintiff.
Following the doctrine enunciated in the Supreme Court cases of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64, and Ballanga v. Hymel, 247 La. 934, 175 So.2d 274, in considering the question of quantum we confine our review to determining whether there has been abuse of the “much discretion” vested in the trial court in assessing damages, considering similar and comparatively recent cases as relevant only for the purpose of determining whether there has been an abuse of that discretion.
In connection with the $3,000 award to Mr. Alexander we have considered the cases cited and relied on by the defendant: Richoux v. Grain Dealers Mutual Insurance Co., La.App., 175 So.2d 883 (1965); Ballard v. National Indemnity Company of Omaha, Neb., supra (1964); Mazoue v. Metairie Cab Service, Inc., La.App., 166 So.2d 57 (1964) ; Lambert v. Faucheux Chevrolet Company, La.App., 161 So.2d 344 (1964) ; and Doyle v. McMahon, La.App., 136 So.2d 89 (1962). We have also reviewed the following cases: Fontenot v. Continental Casualty Company, La.App., 175 So.2d 853 (1965); Evans v. Thorpe, La. App., 175 So.2d 418 (1965) ; Fant v. Zurich Insurance Company, La.App., 160 So. 2d 443 (1964) ; Soileau v. United States Fidelity & Guaranty Co., La.App., 158 So. 2d 397 (1963); and White v. Robbins, La. App., 153 So.2d 165 (1963).
In connection with the $1,500 award to Mrs. Alexander we have considered the cases cited and relied on by the defendant: Crisler v. American Motorists Insurance Company, La.App., 177 So.2d 187 (1965); Rusk v. Allstate Insurance Company, La. App., 167 So.2d 205 (1964); Zeno v. Breaux, La.App., 164 So.2d 666 (1964); and Degeyter v. Trahan, La.App., 113 So.2d *106 808 (1959). We have also reviewed the following cases: Dupuy v. Southern Bell Tel. & Tel. Co., La.App., 173 So.2d 876 (1965); Winfree v. Consolidated Underwriters, La.App., 163 So.2d 377 (1964); Fontenot v. Snow, La.App., 149 So.2d 172 (1963) ; Nolan v. Employers Mut. Cas. Co., La.App., 140 So.2d 482 (1962); Doyle v. McMahon, La.App., 136 So.2d 89 (1962); Wyatt v. Shreveport Transit Co., La.App., 131 So.2d 525 (1961) ; and Smith v. Aetna Casualty & Surety Company, La.App., 128 So.2d 235 (1961).
• Our review of. these cases reveals that both the awards to Mr. Alexander for his injuries and to Mrs. Alexander for her injuries are somewhat higher than other recent awards made for similar injuries. But we do not feel that the difference involved is large enough to constitute an abuse of the “much discretion” vested in the trial court in assessing damages. Accordingly, we will not disturb either award.
We agree with defendant’s second contention, that the trial court erred in including in its award for special damages the sum of $50 for two medical reports. The reports in question were rendered by Dr. Rabin and the charge therefor was $25 each. We are satisfied from the record that the reports were obtained, and the expenses therefor incurred, solely for the purpose of using the same in preparation for, and in conjunction with, this litigation. Such expenses are not items of damage and cannot be awarded. Talbot v. Eusea, La.App., 151 So.2d 531; Baturo v. Employers’ Liability Assurance Corp., La.App., 149 So.2d 627; Watts v. Delta Fire & Casualty Company, La.App., 106 So.2d 752. Accordingly, the award to Mr. Alexander, individually, will be reduced by the sum of $50.
For the reasons assigned, the judgment appealed from is amended so as to reduce the award in favor of Gabriel Alexander, individually, from the sum of $4,501.51 to the sum of $4,451.51. As thus amended, and in every other respect, the judgment appealed from is affirmed; costs in this court to be paid by the defendant-appellant.
Amended and affirmed.