186 So.2d 365 (1966)
Joseph JAEGER
v.
Margaret C. HERALD and her insurer, Liberty Mutual Insurance Company, et al.
No. 2167.
Court of Appeal of Louisiana, Fourth Circuit.
May 2, 1966.
*366 A. R. Occhipinti, New Orleans, for Joseph Jaeger, plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John V. Baus and John C. Combe, Jr., New Orleans, for Margaret C. Herald and Liberty Mut. Ins. Co., defendants-appellants.
Deutsch, Kerrigan & Stiles, Francis G. Weller, New Orleans, for Walton Argeanton, d/b/a Walton's Auto Repair, and Maryland Casualty Co., defendants-appellants.
Before SAMUEL, CHASEZ and BARNETTE, JJ.
BARNETTE, Judge.
This is an appeal from a judgment awarding damages to an injured motorist who suffered a mild whiplash-type injury and a traumatic neurosis as a result of his car being struck from the rear while stopped.
Plaintiff, driving in the 600 block of Chartres Street in a direction away from Canal Street in the City of New Orleans, stopped his car to await traffic clearance. Behind him was a car driven by defendant Richard Junker but owned by defendant Electric Storage Battery Company. This car was also stopped or very nearly so, and Junker was holding it by applying the foot brake to keep it from inching forward. The defendant Margaret C. Herald was proceeding slowly behind the Junker car. Upon observing the traffic stopped or stopping immediately in front of her, she applied her brakes which failed at that moment because of a rupture of the master cylinder. Her car coasted forward slowly, struck the Junker car, and pushed it forward into plaintiff's car. The impact was so slight that no damage was visible to any of the three cars on first inspection. It was later discovered *367 that a boat trailer hitch on the rear bumper of plaintiff's car was bent or broken.
Plaintiff Joseph Jaeger filed suit for damages, claiming whiplash and certain other injuries, against Mrs. Herald and her insurer, Liberty Mutual Insurance Company; Junker and his employer, Electric Storage Battery Company, and its insurer, Employers Mutuals of Wausau. Mrs. Herald and her insurer, Liberty Mutual, then filed a third party action against Walton Argeanton, doing business as Walton's Auto Repair, and his insurer, Maryland Casualty Company, after which plaintiff amended his petition to add Argeanton and Maryland Casualty Company as defendants to the principal action.
The basis of the action against the third party defendant is the undisputed fact that five days prior to the accident Mrs. Herald had the brakes on her car repaired by Walton's. She and her insurer charged that the repair was improperly or negligently done, resulting in the sudden and unexpected failure of the brakes when applied, which was the direct and proximate cause of the accident. It was asserted that the failure of Walton's to inspect the brakes properly and make all necessary repairs to insure that there would be no failure of the brakes when applied was a neglect of duty which Argeanton owed to his customer. The third party plaintiff contends that Argeanton's negligence and improper repair must be presumed from the fact that the brakes did fail, that the doctrine of res ipsa loquitur should be applied, and that Argeanton is required to exculpate himself from this presumption of negligence.
There was judgment below for plaintiff against Mrs. Herald and her insurer, Liberty Mutual Insurance Company, and Walton Argeanton, doing business as Walton's Auto Repair, and his insurer, Maryland Casualty Company, in solido in the sum of $3,589. By separate judgment the suit against Richard Junker and his employer, Electric Storage Battery Company, and its insurer, Employers Mutuals of Wausau, was dismissed. No appeal was taken from that judgment and those defendants are not now before us.
At the conclusion of the trial and arguments of counsel, the trial judge dictated into the transcript his findings of fact and reasons for judgment. His finding of negligence on the part of Mrs. Herald was based on her failure to act as an ordinary prudent person should have acted under the circumstances. He mentioned specifically her "panic" which in his opinion did not excuse her from acting with ordinary care commensurate with the facts and circumstances in which she was suddenly involved. Considering the slow speed of her car, he held that if she had applied her emergency brake the accident might have been avoided and that her failure to do so constituted negligence.
His reasons for holding the defendant Argeanton liable are not so clear. Apparently his liability was not based upon a finding of improper repair, but upon his failure to give proper attention to the correction of conditions of which he had knowledge and his failure to make a further examination of the braking mechanism.
In defense of the third party demand against him, Mr. Argeanton and his insurer contend that the brakes were repaired properly and were working perfectly when the car was delivered to Mrs. Herald. The master cylinder was inspected in the customary manner. There was no indication of trouble to justify the removal or dismantling of the master cylinder.
An expert in brake repair service was called as a witness on behalf of Argeanton. His testimony convinces us that Argeanton did everything required of him in a workmanlike manner, according to the customary practice, and that he was not negligent in not removing or examining the master cylinder beyond the inspection which he did make.
Mrs. Herald took her car to Walton's for brake repair. She made no complaint about *368 a loss of pressure in the master cylinder nor gave any indication which would suggest to a brake repairman that it was not functioning properly. Argeanton made the usual and customary examination of the brakes and found that the linings were worn and that the rivets were cutting into the brake drums. This required grinding the drums and putting in new linings. As is customary in such repair jobs, each wheel cylinder was overhauled, and the worn parts were replaced. After this was done, Argeanton inspected the master cylinder for possible leaks or loss of pressure as customary in such situations.
Mr. John Pusateri, the expert, fully corroborated Argeanton's testimony that the master cylinder is never disturbed in a brake repair job unless there is some indication of malfunction. An inspection for leaking fluid or pressure loss is all that is required. Mr. Argeanton, in our opinion, did all that was required or should have been expected. His work was done in a careful, workmanlike manner.
An attempt was made to show that the overhauling of the wheel cylinders caused increased pressure on the master cylinder which imposed a duty on Argeanton to inspect it more closely. The expert testimony does not support this argument. The rupture of the master cylinder was just one of those things which happen occasionally, even in new cars, according to Pusateri, which cannot be attributed to any specific cause.
Although proof that an undertaker performed his work in the manner which is usual and customary in his particular trade or business does not conclusively establish that he was free from negligence, such a showing is properly a matter for consideration in determining negligence. Harris Drilling Co. v. Delafield, 222 La. 416, 62 So.2d 627 (1952); Pennington v. Justiss-Mears Oil Co., 123 So.2d 625 (La.App.1st Cir. 1960), amended on other grounds, 242 La. 1, 134 So.2d 53 (1961); O'Neill v. Hemenway, 3 So.2d 210 (La.App.Orleans 1941); Harris v. Yazoo & M. V. R., 183 So. 108 (La.App.2d Cir. 1938).
It is our opinion that Pusateri's testimony established more than the customary practice in the trade. His explanation of the procedure followed in such cases convinces us that Argeanton was not negligent in his workmanship, nor did he fail to do anything he should have done. The judgment against him and his insurer must be reversed.
We fail to find any error in the judgment of the trial court insofar as it finds Mrs. Herald negligent. The space separating Mrs. Herald's car from the one in front of her when her brakes failed is not clearly established. But we think all evidence points to the fact that she had enough space, considering her very slow speed and her anticipation of coming to a stop (which did not require a sudden, hard application of her brakes), to have applied her emergency brake. We fully realize that she was confronted with a sudden emergency resulting from a mechanical failure which she had no reason to expect. A party confronted with a sudden emergency should not be held to the same degree of responsibility for making a poor choice of alternatives as one who has more time to consider the alternatives. Dane v. Canal Ins. Co., 240 La. 1038, 126 So.2d 355 (1960); Commercial Standard Ins. Co. v. Johnson, 228 La. 273, 82 So.2d 8 (1955); Whitfield v. Travelers Ins. Co., 160 So.2d 353 (La.App. 1st Cir. 1964); Frey v. DiMaggio, 153 So. 2d 571 (La.App. 4th Cir. 1963).
The doctrine pronounced by this line of cases must be applied in each case according to the facts presented. Sudden emergency is a relative legal concept and varies in gravity according to the facts of each case. In this case Mrs. Herald had only one or two choices, either to apply the emergency brake or throw the engine into low gear. She did neither. In her own words she went into "panic" and did nothing. Considering the very slow speed at which her car was moving and the very slight impact *369 of her car against the one in front of her, any checking or slowing of the forward momentum very probably would have avoided the injury to plaintiff.
Counsel for Mrs. Herald and her insurer has made a forceful argument against retrospective judgment of Mrs. Herald and insists vigorously that she could not have done otherwise in the sudden emergency. We agree with the trial judge, however, that she was negligent in not applying her emergency brake. That is not too much to expect of an ordinary person under the circumstances presented by the facts in this case.
The judgment of the trial court lists nine items of damage. For pain and suffering an award of $2,100 was made. Loss of wages was fixed at $700. Special damages brought the total judgment to $3,589. Neither of the defendants has made a serious attack on the allowance of $2,100 for pain and suffering, but merely assert that it is excessive. They have, however, made strenuous objection to the allowance of $700 for loss of wages. The plaintiff has answered the appeals praying for an increase of the total award to $11,189.
As stated above the impact of the automobiles was very slight. The only physical damage was to the trailer hitch on plaintiff's car for which a special award was made in the sum of $23. Plaintiff was momentarily dazed but drove away from the accident scene with all parties believing there was no damage or personal injury. Plaintiff testified that after he had driven a few blocks he began to feel bad and stopped at a drug store and asked for a sedative or something to relieve his upset condition. From there he went home, and later the same day he called his physician, Dr. Rudolph S. Bila.
Three doctors were called as witnesses for plaintiff and none were called by defendants. From their testimony and that of the plaintiff we must agree with the findings of the trial judge that plaintiff had preexisting medical conditions which were aggravated by the trauma sustained in this accident. He had a 20-percent physical and 10-percent neurological service-connected disability. There was a history of chronic dysentery for which he was treated at Veterans Hospital in 1949 or 1950, but he denied having been treated for this at any time just prior to the accident. The district court found that this condition was aggravated by the trauma. This is a factor to be considered and for which allowance should be made in arriving at the total award of damages. Guerra v. W. J. Young Constr. Co., 165 So.2d 882 (La.App. 4th Cir. 1964); Briley v. North River Ins. Co., 161 So.2d 449 (La.App. 1st Cir. 1963); Rachal v. Bankers & Shippers Ins. Co., 146 So.2d 426 (La.App. 3d Cir. 1962); Cassreino v. Brown, 144 So.2d 608 (La.App. 4th Cir. 1962).
We think there is no doubt that plaintiff suffered a mild cervical sprain or whiplash. Dr. O'Neal Pollingue, an orthopedist, testified that when he first examined plaintiff about two and one-half weeks after the accident there were objective symptoms of sprain-type injury of the cervical spine region. On plaintiff's second visit, approximately one month after the accident, he had a full range of cervical flexion, although he moved his neck slowly and guardedly. Thereafter, Dr. Pollingue observed no objective symptoms of sprain, although plaintiff continued to complain of pain in his neck and arm and headaches for some two years after the accident. X-ray examinations were negative for fracture, dislocation, and interspace narrowing. There was no objective evidence of disc pathology or nerve root injury.
Therapy for the whiplash consisted of wearing a cervical collar (which Dr. Pollingue repeatedly suggested discarding), use of tranquilizers and muscle relaxants, neck traction, and ultrasound treatment which was administered by Dr. Bila during the first two weeks of injury.
Plaintiff also suffered a traumatic neurosis which was manifested by headaches, *370 insomnia, recurrent dreams of the accident, irritability, and a psychological gastrointestinal reaction characterized by dyspepsia, diarrhea, and incontinence of feces. He was treated by Dr. Andrew Sanchez, psychiatrist, in 17 visits over a seven-month period with various tranquilizers and analgesics. Dr. Sanchez testified that plaintiff had a prior emotional disturbance and serious phychological difficulties at home and on his job, all of which contributed to his difficulty. He recognized the long-standing preexistence of problems before the acute phase of Mr. Jaeger's illness and recommended he go to the Veterans Administration Clinic for outpatient long-term psychotherapy.
In Alexander v. Fidelity-Phoenix Ins. Co., 185 So.2d 102, recently decided by this court, April 4, 1966, this panel had occasion to consider quantum of damages for similar whiplash injuries and said:
"Following the doctrine enunciated in the Supreme Court cases of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64, and Ballanga v. Hymel, 247 La. 934, 175 So.2d 274, in considering the question of quantum we confine our review to determining whether there has been abuse of the `much discretion' vested in the trial court in assessing damages, considering similar and comparatively recent cases as relevant only for the purpose of determining whether there has been an abuse of that discretion.
"In connection with the $3,000 award to Mr. Alexander we have considered the cases cited and relied on by the defendant: Richoux v. Grain Dealers Mutual Insurance Co., La.App., 175 So.2d 883 (1965); Ballard v. National Indemnity Company of Omaha, Neb., supra (1964); Mazoue v. Metairie Cab Service, Inc., La.App., 166 So.2d 57 (1964); Lambert v. Faucheux Chevrolet Company, La. App., 161 So.2d 344 (1964); and Doyle v. McMahon, La.App., 136 So.2d 89 (1962). We have also reviewed the following cases: Fontenot v. Continental Casualty Company, La.App., 175 So.2d 853 (1965); Evans v. Thorpe, La.App., 175 So.2d 418 (1965); Fant v. Zurich Insurance Company, La.App., 160 So.2d 443 (1964); Soileau v. United States Fidelity & Guaranty Co., La.App., 158 So.2d 397 (1963); and White v. Robbins, La.App., 153 So.2d 165 (1963).
"In connection with the $1,500 award to Mrs. Alexander we have considered the cases cited and relied on by the defendant: Crisler v. American Motorists Insurance Company, La.App., 177 So.2d 187 (1965); Rusk v. Allstate Insurance Company, La.App., 167 So.2d 205 (1964); Zeno v. Breaux, La.App., 164 So.2d 666 (1964); and Degeyter v. Trahan, La. App., 113 So.2d 808 (1959). We have also reviewed the following cases: Dupuy v. Southern Bell Tel. & Tel. Co., La. App., 173 So.2d 876 (1965); Winfree v. Consolidated Underwriters, La.App., 163 So.2d 377 (1964); Fontenot v. Snow, La. App., 149 So.2d 172 (1963); Nolan v. Employers Mut. Cas. Co., La.App., 140 So.2d 482 (1962); Doyle v. McMahon, La.App., 136 So.2d 89 (1962); Wyatt v. Shreveport Transit Co., La.App., 131 So. 2d 525 (1961); and Smith v. Aetna Casualty & Surety Company, La.App., 128 So.2d 235 (1961).
"Our review of these cases reveals that both the awards to Mr. Alexander for his injuries and to Mrs. Alexander for her injuries are somewhat higher than other recent awards made for similar injuries. But we do not feel that the difference involved is large enough to constitute an abuse of the `much discretion' vested in the trial court in assessing damages. Accordingly, we will not disturb either award."
All of the foregoing cases cited by us in the Alexander case have been reviewed in considering the quantum of damages here. We have also reviewed our opinions in Davis v. Cooperative Cab Co., 176 So.2d *371 148 (1965), and 176 So.2d 152 (1965) (two cases), in which injuries were fairly comparable, excluding the aggravation of the neurological symptoms in the instant case. We stated in the Alexander and Davis cases our belief that the awards to Mr. and Mrs. Alexander and to Mrs. Davis were somewhat higher than other recent awards for similar injuries but were not so far out of line as to justify a finding of an abuse of the "much discretion" vested in the trial court.
The whiplash injury sustained by Mr. Jaeger was comparable to that sustained by Mr. Davis in the cited case who was awarded $1,250. We affirmed that award with the comment that it "was certainly not excessive." Mr. Jaeger's whiplash was probably a little more severe than that sustained by Mrs. Alexander and less severe than that sustained by Mr. Alexander or Mrs. Davis in the cited cases. Consistent with the views we expressed in those cases, we are of the opinion that an award of $1,500 to Mr. Jaeger for his whiplash injury would be adequate. In arriving at this conclusion we are not unmindful of the Supreme Court's rejection of the formula set out in Cassreino v. Brown, supra, and its rationale expressed in Gaspard v. LeMaire, supra; Ballard v. National Indem. Co., supra; and Ballanga v. Hymel, supra. Our comparison of Mr. Jaeger's whiplash injury with the similar injuries in the Alexander and Davis cases is not an attempt on our part to apply the formula of Cassreino v. Brown merely for the sake of uniformity, but rather to support our opinion that there was an abuse of the "much discretion" rule by the trial judge in regard to this item of damage. Winfree v. Consolidated Underwriters, 246 La. 981, 169 So.2d 71 (1964).
In addition to the whiplash sustained by Mr. Jaeger, we have already pointed out that there was an aggravation of a preexisting psychoneurosis as a result of the traumatic injury sustained in this accident. It was shown on trial below that approximately three weeks after Mr. Jaeger's accident, Mrs. Jaeger was injured in an automobile accident necessitating hospital care for about two weeks. Unquestionably this incident with all of its implications of worry, expense, and care of the children in their mother's absence from the home further aggravated Mr. Jaeger's preexisting condition. Dr. Sanchez, psychiatrist, testified that he could not say specifically which of the two incidents was more responsible for the aggravation, but that either one probably would have reactivated the latent symptoms.
The trial judge made an award of $2,100 for pain and suffering. We have no way of knowing how much he intended to allow for the whiplash and how much, if any, he allowed for the traumatic neurosis. At any rate, we think the total allowance is somewhat inadequate in view of our opinion that the whiplash would justify an award of $1,500. This would leave only $600 for the other conditions caused or aggravated by the accident, which we think was inadequate and should be increased to $1,500, making the total award for the injuries sustained $3,000, an increase of $900.
Among the items of special damage awarded by the trial court was one for loss of wages fixed at $700. The trial judge arrived at the figure (being approximately one-third of the $2,121 claimed) by reasoning that the compelling urge to assume additional duties at home during his wife's incapacity was one of three contributing causes of his remaining away from work. He stated that this was not compensable, and then allowed one-third of his claim for loss of wages. We cannot agree with his conclusion. In the first place his rationale would justify an allowance of two-thirds, rather than one-third. But we are of the opinion that no allowance should have been made for loss of wages, because, except for his wife's subsequent accident, there would have been none. We are of the opinion that the court was in error in making this award.
Mr. Jaeger was an employee of the Internal Revenue Service of the United *372 States Government. Among other duties he was required to call on taxpayers for certain information relative to income tax matters. Following the accident on February 6, 1961, the continued to work until February 27, which was the day his wife was injured. From that date to June 12, he did not return to his work. His alleged reason was his personal disability. We are of the opinion that except for his wife's accident and temporary disability there would have been no interruption of his work schedule, although he would have worked for a while in discomfort and some pain as he did between February 6 and 27. It is more than coincidental that his discomfort reached the point that he could no longer work on the very day his wife was injured.
No doubt, as Dr. Sanchez testified, his wife's accident contributed to the aggravation of the preexisting psychoneurosis. This, together with the discomfort following his own traumatic injury, was more than his nervous condition could stand. It is our opinion that the reason Mr. Jaeger stayed away from work from February 27 to June 12, was the added pressure and demands thrust upon him as a direct result of his wife's injury and temporary disability. He is not entitled to recover loss of wages occasioned by his wife's injury. Covey v. Marquette Cas. Co., 84 So.2d 217 (La.App.Orleans 1955).
For the reasons stated above the judgment appealed from is reversed insofar as it casts Walton Argeanton, doing business as Walton's Auto Repair, and Maryland Casualty Company jointly and in solido with defendants Margaret C. Herald and Liberty Mutual Insurance Company. Judgment is now rendered in favor of Walton Argeanton, doing business as Walton's Auto Repair, and Maryland Casualty Company against plaintiff Joseph Jaeger rejecting the plaintiff's demands and dismissing his suit against them. It is further ordered that there be judgment in favor of Walton Argeanton, doing business as Walton's Auto Repair, and Maryland Casualty Company rejecting the third party demands and dismissing the third party petition of Margaret C. Herald and Liberty Mutual Insurance Company against them.
The judgment in favor of plaintiff Joseph Jaeger against Margaret C. Herald and Liberty Mutual Insurance Company is amended so as to strike therefrom the item awarding $700 for loss of wages and to amend the award for pain and suffering so as to increase it from $2,100 to $3,000, making the total judgment in favor of plaintiff Joseph Jaeger against Margaret C. Herald and Liberty Mutual Insurance Company, jointly and in solido, the sum of $3,789, with legal interest from date of judicial demand, and as thus amended, the same is affirmed. The defendants-appellants Margaret C. Herald and Liberty Mutual Insurance Company are cast for all costs of these proceedings.
Reversed in part; amended and affirmed.