CHRIS T. BARNETTE, Judge pro tem.
Bennie Paul Davis and wife, Christine Davis, were injured when their automobile was struck from the rear by a taxicab owned by defendant Cooperative Cab Company, doing business as United Cab Company, and being driven by defendant George A. Binet. Indiana Lumbermens Mutual Insurance Company, public liability insurer of Mr. Davis, was made a party defendant in this suit by Mrs. Davis. Mr. Davis brought a separate suit against Cooperative Cab Company, doing business as United Cab Company, and George A. Binet, No. 1870 on the docket of this Court, 176 So.2d 152. The two cases were consolidated for the purpose of trial below and for briefing and argument in this Court.
The trial below was by jury and its verdicts, finding liability against Cooperative Cab Company, doing business as United Cab Company, and George A. Binet and awarding damages in favor of Mrs. Davis in the amount of $5,000 and in favor of Mr. Davis in the amount of $4,000, were made the judgments of the court in the two cases respectively. In the case of Mrs. Davis, judgment was found in favor of the defendant Indiana Lumbermens Mutual Insurance Company dismissing her suit as against it. The defendants Cooperative Cab Company, doing business as United Cab Company, and George A. Binet have appealed suspensively in both cases.
The liability of appellants is conceded. The judgment dismissing the suit of Mrs. Davis against Indiana Lumbermens Mutual Insurance Company is not contested since Mr. Davis admittedly was not at fault. The only issue presented by this appeal is that of quantum of damages. We will confine our opinions to this question only. In this opinion we will consider only the judgment in favor of Mrs. Davis. In a separate opinion we will discuss the quantum *149 of damages of Mr. Davis (see opinion this day handed down in case No. 1870).
The defendants-appellants did not call any witnesses to testify on the question of injuries suffered by Mrs. Davis. We have before us only the testimony of the plaintiff herself, her husband, and Dr. Blaise Salatich, the orthopedic specialist who treated her.
Mrs. Davis’ injury is what is described by the term “whiplash” involving the cervical and lumbosacral areas of the back.
After returning to her home, Mrs. Davis called Dr. Salatich by telephone on the night of the accident and complained of pain and related symptoms, including a brief blackout; numbness; difficulty of movement; feeling faint; extreme fatigue; nausea; and headache. He prescribed pain-relieving medicine and had her come to his office the next day for examination. Cervical X-ray examination revealed hypertrophic arthritis with a spurring formation which encroached to some degree into the canal through which the nerves pass from the spinal chord. He did not consider this condition as particularly serious but did say it would be aggravated by the injury.
After testifying at length on the various tests made in his examination and relating in detail the significant symptoms, both objective and subjective, he testified as follows :
“Q After examining these x-rays, examining Mrs. Davis and taking the history, did you arrive at an impression of what her injuries — ■
■“A Yes, I thought Mrs. Davis had sustained, one, a cerebral concussion of short duration, which means — that is a medical term for black out. Although it was for a very short period, she still lost contact with realism. She was — everything went dark, and that was follows [sic] by a stunned and dazed and non-reactive state. That’s why she didn’t feel anything too much after the accident, she was sort of numb all over; well, cerebral concussion, short duration. Two, a whiplash type neck injury — I’ll give you the medical terms and then in lay language — involving the periarticular, capsular, liga-mentous and musculo-fascial structures, cervical vertebrae, subsiding, causalgic pain. ‘Whiplash type’ means a sudden change of direction of your head and neck due to a blow from the rear, unexpected, where your head flies backward and forward real rapidly and suddenly. ‘Periarticular’ means the soft structures around the vertebrae. Seven vertebare [sic] in your neck, you have to have seven capsules. ‘Ligamen-tous’ means what keeps your vertebrae together; and ‘musculo-facial’ [sic] means the muscles and muscle attachments of the vertebrae; and I thought it was subsiding and it was associated with residual dysfunction, which means it was acting abnormally, and causalgic pain; and three, that she had a whiplash type low back injury involving ligamentous and musculo-facial [sic] structures, lumbosacral region, subsiding, residual dysfunction and low back pain. * * * ”
A cervical collar was prescribed and fitted, and thereafter Mrs. Davis continued under physiotherapy which involved high frequency diathermy over the cervical and lower back areas. Tranquilizing drugs, relaxants, and pain-relief medication were prescribed.
Mrs. Davis, who was aged 41 at the time of the accident, continued under treatment of Dr. Salatich; and at the time of the trial below, he found her to be “significantly *150 improved” but that she did require further treatment. She had “slowly and gradually improved” but still had a residual “to some degree”.
No contradictory medical testimony was offered and the jury before which the case was tried evidently accepted the testimony of Dr. Salatich at full value. We can find no reason to disturb its conclusion in this respect.
In considering the correctness of the jury’s award of $5,000, we are governed by the principles of law set out by the Supreme Court in the recent case of Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964). The Court there stated its reason for granting writs in that case and two others[1] to have been because it deemed it necessary to review its decision in Gaspard v. Le-Maire [2] with a view of clarification, where needed, and to remove any doubt as to its import.
The Court said in the Ballard case:
“A careful study and analysis of the Gaspard case will readily disclose this court simply applied these codal provisions : ‘Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it.’ Art. 2315 But ‘In the assessment of damages * * * in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury * * *.’ Art. 1934(3).
“The much discussed Gaspard case recognized and applied the principle of law which has been in our Civil Code since 1825. The principle is simply a declaration of judicial method based on common sense and has no relation to the authority vel non of appellate courts. It is a guide for the courts, reflecting the wisdom gained through experience in judicial process, to achieve justice between the parties in the assessment of damages.
“ * * * On appeal, if the appellate court affirms the lower court and quantum is the issue, the court should then review all the facts and circumstances on which the lower court based the quantum of award, but this review is-confined to determining whether there has been an abuse of the ‘much discretion’ vested in the trial court in assessing damages. After a review of all the facts and circumstances, if the appellate court finds that there has been an abuse of discretion, the amount of the award should be increased or decreased as the case warrants. Strictly speaking, in the review of the damage assessment the general evidential rules of preponderance of evidence or manifest error are not pertinent and are without application, since the only question is whether the lower court has abused its discretion in assessing the damages.
“In resolving the question of whether the jury in fixing the amount of the award in the Gaspard case had abused’ the discretion vested in it by law, we pointed out that ‘ * * * In view of our codal provision, the appellate courts should consider the amounts of’ awards in other cases only so far as they are relevant to the question of whether the judge or the jury has. abused its discretion in fixing the award in the case under consideration.’ However, an appellate court should not fix-the amount of the award solely to-maintain uniformity of awards, thus ignoring the prerogatives of the trial? judge or jury in assessing awards in-. *151 such cases as set forth in Art. 1934 of the Civil Code. The amounts of awards in so-called 'similar’ cases are relevant only to determine whether there has been an abuse of discretion, but for no other purpose — that is, to determine whether the award is so excessive or so inadequate as to be an abuse of discretion. * * * ”
In his charge to the jury, the trial judge said:
“ * * * As a guide, gentlemen, the Courts have adjudicated damages in whiplash cases, and the Court will read you from 144 So. 2, at page 611, * * * ”
to which counsel for plaintiff-appellee took exception and argued that Cassreino v. Brown, 144 So.2d 608 (La.App. 4th Cir. 1962), had been superseded by the Gaspard case. This was before the Ballard, Cor-mier, and Winfree cases were decided in the Supreme Court.
In Cassreino v. Brown, supra, Judge Tate, organ of this Court by special assignment, cited many cases in our jurisprudence in which awards for whiplash injuries had been allowed and placed them in three categories: (1) those in excess of $5,000 for severe injuries; (2) those in the $2,500-$3,500 range for serious but less severe injuries; and (3) those under $2,500 for moderate or slight injury with little or no residual. We can see the danger in following this case too literally because it would inevitably lead to an attempt by the courts to .apply with mathematical exactness a yardstick of damages in all such cases. Our courts have repeatedly pointed out the danger in such a principle. For this reason the Supreme Court rejected the Cassreino case and said in the Winfree case:
“While we did not specifically overrule the Cassreino case in our recent , decision in the Gaspard case, in effect we did so, and insofar as it classifies whiplash injuries in three categories with a fixed award for each category, we now specifically overrule that case.”
The Court then went on to say in substance that the use of the “categories” set forth in Cassreino by the Court of Appeal “as a guide” to determine whether the awards were “out of proportion” resulted in no error under the facts of that particular case. The Court said: “From our appreciation of the facts and circumstances in this case, we are in agreement with the Court of Appeal [in finding that the jury had abused its discretion and that the awards were excessive].” We interpret this as meaning that the Court disapproves and rejects the principle of placing personal injuries in specific categories to determine the amount of damages to be awarded. The conclusion reached in the Cassreino case was not disapproved, only the method employed in reaching it. The cases there cited and Cassreino itself may be considered along with other cases in our jurisprudence in determining abuse of discretion.
We have considered the original majority opinions and the able dissenting opinions in Ballard v. National Indemnity Co. of Omaha, Neb., reported in 159 So.2d 763 (La.App. 3rd Cir. 1964), and in Winfree v. Consolidated Underwriters, reported in 163 So.2d 377 (La.App. 3rd Cir. 1964), and on the denial of rehearing 164 So.2d 183 (La.App. 3rd Cir. 1964), and have compared the extent of the injuries sustained by the plaintiff in the instant case with those in the cited cases. The extent of plaintiff’s injuries in the instant case as described in the uncontradicted testimony of her orthopedic specialist, in our opinion, supports the verdict of the jury. We are of the opinion that its award of $5,000 was, to say the least, very liberal; but there is not enough difference between our opinion and the jury’s verdict in this respect to justify a finding of abuse of its discretion in the light of the cited cases and the jurisprudence of this State.
The trial judge’s charge to the jury could have had the effect of confining the jury’s *152 deliberation within the limits of the categories set forth in the Cassreino case. Whether or not it did in fact do so, we think its verdict is within reasonable limits under the facts of this case.
For these reasons, the judgment appealed from is affirmed at appellant’s cost.
Affirmed.

. Cormier v. Traders & General Insurance Company, 246 La. 976, 169 So.2d 69 (1964), and Winfree v. Consolidated Underwriters, 246 La. 981, 169 So.2d 71 (1964).

. 245 La. 239, 158 So.2d 149 (1963).