CHRIS T. BARNETTE, Judge pro tern.
This is a companion case to Mrs. Christine Davis v. Cooperative Cab Company, doing business as United Cab Company, George A. Binet, and Indiana Lumbermens Mutual Insurance Company, No. 1869 on the docket of this Court, 176 So.2d 148. The facts are related in our opinion, this day filed in that case. The only issue to be discussed in this opinion is the quantum of damages awarded appellee in this case, Bennie Paul Davis. The jury awarded Mr. Davis damages of $4,000 without itemizing the elements of special damage. Thq items of special damage were: doctors bills for Mr. and Mrs. Davis, $695 and $560 respectively, or a total of $1,255 (although Mr. Davis only alleged $545 and $420 respectively in his petition); repair of automobile, $68.50; X rays, $100; and a small amount for incidental expenses, including a cervical collar for Mrs. Davis. In addition, claim was made for loss of wages of Mrs. Davis for one year at $25 per week, or a total of $1,300. The verdict of the jury obviously included these special items totalling, in round figures, $2,750, thus leaving a balance of $1,250 for Mr. Davis for his injury. The defendants-appellants offered no testimony in rebuttal to dispute-the correctness of these special items, although there was some question of the-accuracy of the actual loss of wages of Mrs. Davis. There is no reason which we-can find from a close examination of the *153 testimony to indicate any substantial error in regard to these special items. We therefore find that they were proven by a preponderance of the evidence. This leaves only the question of excessiveness of the award of approximately $1,250 for Mr. Davis’ personal injuries.
The only witnesses who testified as to the extent of Mr. Davis’ injuries were Mr. and Mrs. Davis and Dr. Blaise Sala-tich, orthopedist.
The injury sustained by Mr. Davis was what is commonly called a “whiplash” involving the cervical and low back regions. Mr. Davis had suffered a similar injury about five weeks previously in another automobile accident, specifically on May 8. The accident in question occurred on June 12, 1962, and at the time Mr. Davis was wearing a cervical collar and a corset type of brace prescribed for the earlier injury.
Mr. Davis was making a good recovery from the first accident; but we are of the opinion, supported by the testimony of Dr. Salatich and Mr. Davis, that the accident on June 12 caused additional injuries or at least aggravated the existing injury and retarded recovery.
After relating the symptoms in detail, Dr. Salatich testified as follows:
“A Well, my impression after he told me how he got hurt, and what I found on physical examination, I was of the impression or diagnosis that he had sustained a whiplash type neck injury. I’ll give the medical terms first, involving the periarticular, the capsular, ligamentous and musculo-facial structures, cervical vertebrae, and it was subsiding, functional disability and pain. There was a whiplash force, sudden change of direction of his head and neck, and it stretched, tore, any combination of the soft parts that held the vertebrae together, the muscles and ligaments and the muscle attachments. I also thought that he had a whiplash low back injury involving the ligaments and the muscle attachments at the lumbo sacral level, which is at his lower back in the mid line.
******
“Q Could you state what effect the second injury had upon the first one?
“A Well, I would say the second injury either did two things, it had to do either one, one of them, it had to aggravate the first one, or it had to cause new injury.
“Q What type of treatment did you recommend for this injury, the injury of June 12th?
“A I recommended that he wear a cervical collar and a lumbosacral corset, and I also recommended that lié come up to my office and get physiotherapy treatments utilizing short wave diathermy focused over the back of his neck and his lower back. I also prescribed muscle relaxant medication, drugs to reduce the muscle spasm, and analgesics, which are pain killing drugs, and a counter irritant, which is a cream he was instructed to apply over his lower back and the back of his neck two or three times daily. He was also told to apply a heating pad at home over these areas.
“Q Would you state what Mr. Davis’ present condition is ?
“A I would say his present condition is much improved over when I first saw him. He presented a rather outstanding clinical picture for a rather extended period of time, and then he irery slowly and *154 gradually improved to a certain point, and I would say that now he is static.
‡ * * * * *
"Q Doctor, could you state how much longer Mr. Davis might expect to be affected by this type of an injury or what his future clinical course could be ?
“A As I said before, I like to project future predictions on factual information. These types of conditions are documented as not being infrequently lasting four years and some seven and ten. I can only base my opinion on factual, documented information by outstanding authorities on this subject.”
We have discussed fully some recent cases in our jurisprudence on the subject of quantum of damages, with specific reference to whiplash injuries in the case of Mrs. Christine Davis v. Cooperative Cab Company et al., No. 1869 on our docket, this day decided. We adopt the pertinent part of our opinion in that case in the instant one.
As stated above, the jury did not itemized the damages awarded Mr. Davis, and we have assumed that $1,300 was allowed for loss of wages of his wife. Making allowance for some possible error of amount in allowance of this particular item, the difference would add no significant amount to the award for personal injury suffered by Mr. Davis.
The $4,000 verdict in favor of Mr. Davis, including the special damages, was certainly not excessive under the facts of the case as we have construed them, and there was no abuse of discretion by the jury.
The judgment appealed from is affirmed at appellants’ cost.
Affirmed.