175 So.2d 418 (1965)
Richard B. EVANS, Plaintiff-Appellee,
v.
Clyde Thomas THORPE et al., Defendants-Appellants.
No. 10371.
Court of Appeal of Louisiana, Second Circuit.
April 28, 1965.
Rehearing Denied May 21, 1965.
*420 Blanchard, Walker, O'Quin & Roberts, Shreveport, for Clyde Thomas Thorpe and Phoenix Ins. Co., defendants-appellants.
Emmons & Henry, Jonesboro, for plaintiff-appellee.
Before HARDY, GLADNEY, and AYRES, JJ.
AYRES, Judge.
This action in tort arose out of an automobile accident of August 4, 1963, on State Highway 9, known locally as the Summerfield-Johnson City Highway. Involved were plaintiff's 1958 model Chevrolet sedan and defendant Thorpe's 1962 Chevrolet sedan. Made a defendant in addition to Thorpe was his public liability insurer, The Phoenix Insurance Company.
This is a companion case to that of Evans et al. v. Phoenix Insurance Company et al., bearing No. 10370 of the docket of this court (175 So.2d 425), which arose out of the same accident and with which it was consolidated for trial.
Upon the basis of a conclusion that both Thorpe and Evans, drivers of the vehicles involved, were guilty of negligence, but that Thorpe had the last clear chance to avoid the accident, there was judgment in favor of plaintiff against Thorpe and his insurer, in solido, for $3,000.00 for the injuries sustained, plus $658.37 in special damages. From this judgment, defendants appealed.
A brief review of the facts concerning the occurrence of the accident is deemed appropriate to a discussion and resolution of the issues presented for determination. The accident occurred about 12:30 p. m. The weather was clear, the roadway dry, and no unusual physical or atmospheric conditions existed to obscure the motorists' view. The highway, a 2-lane blacktop road, approximately 20 feet wide, straight and level for a considerable distance in both directions from the scene of the collision, was intersected near that point by a gravel road which formed a dead-end or "T" intersection as it joined the south side of the highway. Prior to the collision, both vehicles were proceeding westerly on the asphalt road. The accident occurred as Thorpe attempted a passing movement.
Inattention to their driving, not maintaining a proper lookout, and failure to keep their vehicles under control were charges of negligence directed to both drivers. Thorpe was further charged with negligence in attempting a passing movement without notice or warning to the forward car, at an intersection, and when the way was not clear, despite Evans' signal of an intention to execute a left turn, and in failing to take any action to avoid an accident when, had he been keeping a proper lookout, he would have had time and opportunity to avoid the accident. Failure to give a signal indicative of an intention to make a left turn and the attempt to execute such a maneuver when he saw, or should have seen, that it could not be made in safety were charges directed to Evans. In addition, he was charged, in the aforesaid particulars, with contributory negligence.
*421 Each of the parties litigant contends that the driver for whose conduct it is responsible was free of negligence. Appellants Thorpe and The Phoenix Insurance Company contend, also, that Thorpe did not have the last clear chance of avoiding the accident, and, finally, that the amounts awarded plaintiffs were excessive.
Attention shall first be given to the charges of negligence as they relate to plaintiff, Evans. On approaching the road into which he intended to turn, Evans reduced his speed from 60 or 65 m. p. h. to 35 m. p. h. While there is some controversy as to whether he turned on his blinker lights to indicate the intended turn, we are convinced that he did so; Evans so testified. Thorpe, in this connection, testified that he did not know whether the light was a blinker light or a brake light, but admitted that he saw a nonblinking light on the left rear of the Evans vehicle.
Prior to his attempted turn, Evans had observed, from a considerable distance to his rear, the approach of the Thorpe automobile. However, he made no further observation to ascertain the position of the following car on the highway or the distance at which it was trailing. Nevertheless, without looking to the rear as he approached the intersection, Evans began the turning movement despite a warning from his mother and nieces, his guest passengers, to the effect that the Thorpe automobile was approaching and was near at hand. Evans seemingly contented himself with and relied upon his blinker signals. His reply to the warning was that he had his blinker lights on and that the driver of the approaching car would stop. Therefore, he proceeded with the turning movement and, when the front of his car extended approximately two feet across the center line of the highway, it was struck on its left rear side by the right front of the Thorpe vehicle. Clearly, Evans was not keeping or maintaining a proper lookout.
The rule is well settled in the jurisprudence of this State that a motorist intending to make a left turn on a public highway must ascertain, before attempting to do so, that the movement can be made in safety. Johnson v. Wilson, 239 La. 390, 118 So.2d 450 (1960); Washington Fire & Marine Ins. Co. v. Firemen's Ins. Co., 232 La. 379, 94 So.2d 295 (1957); Leonard v. Holmes & Barnes, Ltd., 232 La. 229, 94 So.2d 241 (1957); LeBrun v. American Paper Mfg. Co., 41 So.2d 94, La.App., Orleans 1949.
Another rule equally well established and having application to the situation presented here is that a motorist intending to make a left turn must not be content with merely giving a signal indicative of his intent but he must look before turning to ascertain if such movement can he made with reasonable certainty. Johnson v. Wilson, supra; Moorehouse v. Gallow, 156 So.2d 62, La.App., 1st Cir. 1963; Crane v. London, 152 So.2d 631, La.App., 2d Cir., 1963; Guidry v. United States Casualty Co., 134 So.2d 319, La.App., 3d Cir. 1961; Johnson v. Southern Farm Bureau Casualty Ins. Co., 124 So.2d 331, La.App., 3d Cir. 1960; Jenkins v. Fidelity and Casualty Co., 92 So.2d 120, La.App., 1st Cir. 1957. Thus, it is not enough that the driver intending to make a left turn signify such intention by the appropriate signal; he is under a duty to look to his rear just before attempting the turn in order that he may be sure the turn can be made in safety. Washington Fire & Marine Ins. Co. v. Firemen's Ins. Co., supra; Bellard v. Texas Services, Inc., 151 So.2d 694, La.App., 3d Cir. 1963.
Moreover, the importance of a strict observance of the aforesaid principles has been emphasized on numerous occasions by pronouncements that the law places a responsibility upon a motorist desiring to make a left turn to ascertain before doing so that such movement can be made in safety and without danger or undue delay to either overtaking or oncoming traffic, *422 and that the motorist must refrain from such a maneuver unless the way is clear. When, however, such a left turn is attempted and an accident occurs, it has been held that the burden rests heavily on the motorist making the turn to establish his freedom from fault. Washington Fire & Marine Ins. Co. v. Firemen's Ins. Co., supra; Desormeaux v. Continental Insurance Company, 153 So.2d 128, La.App., 3d Cir. 1963; Codifer v. Occhipinti, 57 So.2d 697, La.App., Orleans 1952.
Evans clearly violated the aforesaid cardinal rules of the road, as a result of which the accident occurred. His negligence is therefore manifest.
In passing to the question of negligence directed to defendant Thorpe, the driver of the overtaking vehicle, it may be appropriate to first point out that the statutory rule is that
"* * * the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance, and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle." LSA-R.S. 32:73.
Nor, the statute further provides, shall a vehicle be driven to the left of the center of the highway in overtaking and passing another vehicle proceeding in the same direction unless the left traffic lane is clearly visible and is free of oncoming traffic for a sufficient distance to permit completion of the passing movement without interference with the safe operation of any vehicle met or overtaken. LSA-R.S. 32:75.
Thorpe's testimony was evasive, indefinite, and unconvincing. Nevertheless, certain important facts, we think, were established by a preponderance of the evidence. Thorpe, on seeing the light on the left rear of the Evans vehicle, applied his brakes and skidded his car a distance of 95 feet. After observing the light indicative of a left turn, a reaction time, normally considered as three-fourths of a second, elapsed before Thorpe applied his brakes. During that interval, at a speed of 60 m. p. h., a vehicle would travel 66 feet. Thus, when Thorpe saw Evans' signal, he was probably, at least, 160 feet distant, and, according to his own testimony, he was traveling 55-60 m. p. h.
Moreover, as already observed, the surface of the highway was at least 20 feet wide. The south eight feet remained open as was the shoulder of the road, broadened at, and by, the intersecting gravel road. Thus, there was afforded more than ample space for Thorpe to complete a passing movement in safety, had he been keeping a proper lookout and had he been reasonably vigilant. This appears particularly true when Evans had stopped before attempting the turn, as he testified, or was obviously moving very slowly, as we believe, inasmuch as the front end of his vehicle had reached a point only two feet beyond the center line of the highway while Thorpe was traveling the distance from the point where he first observed Evans' movement to the left. In this connection, it may be pointed out that Thorpe was not confronted with an emergency, nor does he so contend.
A motorist operating an automobile approaching another motor vehicle from the rear, while both vehicles are traveling in the same direction, is under a duty to exercise great care, sometimes referred to as extraordinary care. Burns v. Evans Cooperage Co., 208 La. 406, 23 So.2d 165 (1945); Emmons v. Bertucci, 163 So.2d 814, La.App., 4th Cir. 1964; Johnson v. Wilson, 97 So.2d 674, La.App., 1st Cir. 1957; Washington Fire & Marine Ins. Co. v. Bradford, 96 So.2d 332, La.App., 2d Cir. 1957 (cert. denied); Ravare v. McCormick & Co., 166 So. 183, La.App., 2d Cir. 1936.
As was stated by the Supreme Court in the Burns case, in holding negligent the driver of an overtaking vehicle who failed to maintain a proper lookout and to observe the slowing of a forward vehicle preparatory *423 to the execution of the driver's intent to make a left turn:
"It is the duty of the driver operating an automobile, upon approaching another automobile from the rear while both cars are travelling in the same direction, to exercise a great deal of care. He must look out for the person ahead, realizing that that person is engaged in handling a high-powered machine requiring constant attention and that his lookout is forward and not backward. The driver of the rear car must keep a safe distance behind the front car and must have his machine under such control as to avoid injury to the car ahead or to his own car so long as the driver of the front car is driving in accordance with his rights."
The evidence in this case shows that defendant was not operating his car in accordance with this rule. He was driving his automobile near the maximum statutory rate of speed, paying little or no attention to the surrounding facts and circumstances, with the result that he suddenly came upon a car that was slowing down prior to executing a left turn.
Moreover, the duty of those in charge of the operation of automobiles to look ahead and observe never ceases, and, in legal contemplation, what they can see they are charged with having seen, and the failure to see that which could have been seen by the exercise of due diligence does not absolve a motorist from liability. Jackson v. Cook, 189 La. 860, 181 So. 195 (1938). This principle, so often stated and so consistently adhered to, has become so well settled in the jurisprudence of this State that citation of additional authorities would be superfluous.
In applying these principles to the facts of the instant case, the conclusion is that a substantial, contributing factor constituting a proximate cause of the accident was Thorpe's lack of a proper lookout in his heedless approach and attempt to pass the Evans vehicle.
Plaintiff, Evans, nevertheless contends that he should not be denied recovery because of his negligence inasmuch as Thorpe had the last clear chance to avoid the accident, but failed and neglected to do so. The last-clear-chance doctrine is a humanitarian doctrine of discovered peril based on the principle that no one having an opportunity to avoid injury to another, after becoming aware of such person's perilous position, or by the exercise of due diligence could and should have become aware thereof, may negligently injure him though he is at fault. Stated as to motorists, the rule is that, where a motorist sees or, by the exercise of due diligence, could and should have seen a person in a position of peril, of which such person is not aware or is unable to extricate himself, the duty devolves upon the motorist to use every possible available means to avert injury, notwithstanding the negligence of such person; and, if the motorist fails to perform such duty, the last-clear-chance doctrine applies, even though the person's negligence continues to the moment of the occurrence of the accident. Jackson v. Cook, supra.
Thus, in the cited case, a motorist who was negligent in failing to keep a proper lookout was liable, under the last-clear-chance doctrine, for striking a contributorily negligent drunken pedestrian who was walking in the nighttime on the right side of the highway to the front of the motorist's automobile, notwithstanding that the motorist did not actually discover the pedestrian's peril until within five feet of him, where the motorist could have timely discovered the pedestrian's peril if he had been looking ahead. See, also, Rottman v. Beverly, 183 La. 947, 165 So. 153 (1935).
However, before this doctrine may be given effect, three essential facts must be established: first, that plaintiff was in a position of peril of which he was either *424 unaware or unable to extricate himself; second, that the defendant was in a position to discover plaintiff's peril; and, third, that, at such time, the defendant could have, with the exercise of reasonable care, avoided the accident. McCallum v. Adkerson, 126 So.2d 835, La.App., 2d Cir. 1961; Maryland Casualty Co. v. Allstate Insurance Co., 96 So.2d 340, La.App., 2d Cir. 1957 (cert. denied).
The evidence is clear that plaintiff, Evans in attempting the left-turn movement, placed himself in a position of peril of which he was not aware at the time. Defendant Thorpe was in a position to see or discover plaintiff's peril; in reality, he did discover facts and circumstances by which, through the exercise of due diligence and reasonable care, he should have realized plaintiff's peril. Thorpe continued without in the least altering his course; his path varied neither to the right nor to the left. Although sufficient space permitted a safe passage in his lane of travel, Thorpe, nonetheless, apparently oblivious to the situation and without having properly or timely observed the forward car, made no attempt to change his course or to avoid the collision. By maintaining a proper lookout and with the exercise of reasonable care, the conclusion is inescapable that he could have avoided the accident. This humanitarian doctrine has, as we find, clear application to the facts disclosed by the record, and to which we have heretofore referred, so far as concerns plaintiff, Evans.
Lastly, for consideration, is a question of the amount of an award to compensate plaintiff for the injuries and damages sustained. Plaintiff, 51 years of age, a common laborer earning $1.15 per hour at the time of the accident, was awarded $3,000.00 for all damages sustained by him, including compensation for pain and suffering endured, as well as for loss of wages.
Soon after the accident, plaintiff was hospitalized in the Homer Memorial Hospital under the care and treatment of Dr. Thomas M. Deas. Plaintiff was found to be suffering "quite severe pain in the left part of the back of his neck, radiating up to the head and slightly down into the left shoulder." There was also pain and soreness in the muscle of the left lumbar region of the back. These areas were said to have been quite tender. A diagnosis was made of a lumbar sprain and sprain of the dorsal muscles of the left side of the neck. No fractures were disclosed by an x-ray examination.
Plaintiff was placed in cervical traction, fitted with a cervical collar, and treated with heat and analgesics for a week, after which he was permitted to return home. He was again seen by the doctor August 14, 1963, at which time he was thought to be improving. Persistent tenderness and muscle spasm were, however, noted in the neck and lumbar area of the back. The use of the cervical collar was continued, as were the treatments with heat, muscle relaxants, and analgesics. At that time, the prognosis was said to be fairly good. However, the doctor's opinion was that plaintiff would continue to have pain in his neck for several months. Treatments were continued thereafter for a period of time not definitely established. Plaintiff had not, however, returned to his employment on the date of trial, five months and ten days following the accident.
That $291.79 was incurred for medical expenses in the treatment of injuries and that the damage to plaintiff's car amounted to $366.58 were established and properly allowed. We find no basis for disagreement in the award made by the learned trial judge. The award is, in our opinion, neither excessive nor inadequate.
Accordingly, the judgment appealed is affirmed at defendants-appellants' cost.
Affirmed.
*425 GLADNEY, Judge (dissenting).
I respectfully dissent from the holding of the majority of this court insofar as it holds that Clyde Thomas Thorpe was guilty of negligence.
Rehearing denied; GLADNEY, J., dissenting.