AYRES, Judge.
This action in tort, as well as that of Johnie Johnson and Eula Mae Johnson v. Shreveport Transit Company, Inc., No. 10624 on the docket of this court, 188 So.2d 713, with which it was consolidated for trial, arises out of a collision between an automobile operated by plaintiff, Murray, and a trolley operated by defendant.
The accident occurred about 1:40 p. m. October 31, 1964, at the intersection of Texas Avenue and Hope Street in the City of Shreveport. Both vehicles were proceeding in a southerly direction on Texas Avenue with the Murray vehicle in the lead, followed closely to the rear by the trolley. Traffic at this intersection is con *711 trolled by the usual electric lighting system. On the approach of the vehicles to the intersection the light was red, whereupon plaintiff stopped his car and so did the driver of defendant’s trolley. The trolley was stopped a few feet to the rear of the automobile. Upon a change of lights to a favorable signal, Murray proceeded into the intersection about a car’s length, when his motor began to sputter and slow down. On reaching a point near the center of the intersection, the car was struck from the rear by defendant’s trolley and knocked several feet forward.
Johnie Johnson and Eula Mae Johnson were Murray’s guest passengers. As the representative of an automobile sales agency, Murray was demonstrating the car with the view of its ultimate sale to the John-sons.
Negligence charged to the operator of the trolley included starting too rapidly, driving too closely to the lead vehicle, and failing to maintain a proper lookout or to keep control of his vehicle, and, finally, in running into the rear of the forward vehicle. In the alternative, defendant’s driver was alleged to have had the last dear chance to avoid the accident, but failed to do so. Countercharges of negligence directed to plaintiff consisted of stopping his car without signaling or warning at an intersection, and in failing to maintain control of his car.
Although written reasons were not assigned, we are informed through counsel’s briefs that, although plaintiff was held free of negligence, defendant’s driver was also so held, inasmuch as he was confronted with a sudden emergency. From a judgment accordingly rejecting his demands, plaintiff appealed.
No serious dispute exists as to the material facts of the case. Plaintiff explained that after starting and continuing forward, his motor began to sputter, tending to “conk out,” but that he was continuing to move slowly when struck from the rear. His testimony was corroborated by that of his passengers. Defendant’s driver testified first that he did not recall and did not know whether plaintiff had actually stopped in the intersection. He later maintained, however, that plaintiff’s car had stopped.
Important, however, are the questions as to whether defendant’s driver was maintaining a proper lookout and whether he was following plaintiff’s vehicle too closely. Defendant’s driver was generally evasive in his testimony, particularly as to whether he was maintaining a lookout; he could not recall whether he watched plaintiff’s car from the time it started until the collision occurred. Obviously, he should have been keeping a constant lookout with respect to the forward car, which he was following in close proximity. His own testimony is convincing of his failure in this respect. Too, it would clearly appear that one car length was too close for the trolley to follow a vehicle, especially in view of the fact that the driver was not constantly on the alert and in view of the traffic on one of the city’s main thoroughfares. The physical facts supporting this conclusion are that plaintiff’s car was knocked several feet, a door was knocked open, the rear bumper was bent into the car’s frame, and bolts were knocked loose from the trolley bumper, falling to the ground.
In these respects, the actions of defendant’s driver were clearly in violation of the rule established by both state statute and city ordinance that the driver of a motor vehicle should not follow another vehicle more closely than is reasonable and prudent, having regard for the speed of such vehicles and the traffic upon and the condition of the highway or street. LSA-R.S. 32:81 subd. A.
The case of Bouis v. Employers Liability Assurance Corporation, 160 So.2d 36, 38, La.App., 3d Cir., 1963, involved a situation similar to the instant case. There, the chief of police was the driver of the last car in a line making up a funeral procession in the City of Natchitoches. One of the cars in the procession had trouble and stopped, causing the vehicle to its rear to also *712 stop. The police vehicle did not stop but continued at a speed of about five miles per hour and struck the vehicle in front of it. In answer to the argument that the accident was unavoidable, the court stated:
“We cannot agree with this argument. The jurisprudence is well established that the operator of the following vehicle is required to keep his car under control; to observe the forward vehicle; to follow same at a safe distance and if an accident occurs he is generally presumed to be negligent where a rear end collision occurs. See Foster v. Phoenix Insurance Company, 146 So.2d 647 (1st Cir.App.1962) and the cases cited therein. The stop which was made by the Moses’ car was not so sudden or unexpected that if Chief Durr had been observing ahead, and following at a safe distance, he would not have been able to avoid the collision.”
This rule was recognized in Self v. State Farm Mutual Automobile Insurance Co., 183 So.2d 68, 71, La.App., 3d Cir. 1966, wherein appears the following observation:
“The law imposes upon a following motorist a duty to exercise great care, sometimes referred to as extraordinary care. Evans v. Thorpe, La.App. 2 Cir., 175 So.2d 418. As a rule, when a following vehicle collides with the rear of the lead car, the following driver is considered to be at fault. An exception to this general rule of law has been recognized, however, in instances where the driver of the lead vehicle negligently creates a hazard which the following vehicle cannot reasonably avoid. * * *
“The driver of a car following a few feet behind another, under circumstances such that he should anticipate the possibility of obstruction or trouble of some sort, should have his car under such control or proceed at such a rate of speed that he can stop at once if the car in front stops.”
In Vienne v. Chalona, 28 So.2d 154, 155-156, La.App., Orleans 1946, defendant’s car was stopped immediately behind plaintiff’s car on a street in the City of New Orleans, awaiting the passage of a railroad train. The defendant testified that when the railroad gates were opened plaintiff proceeded about 50 feet and then suddenly stopped without warning, whereupon the defendant, who had been following at a distance of 10-15 feet, ran into the rear of plaintiff’s car, notwithstanding that she quickly applied her brakes, but was unable to stop in time to prevent the collision. The court, with respect to these facts and the testimony of defendant’s driver, made this comment:
“Even if we accept the statement of Mrs. Streckfus as true, it seems very clear that she was guilty of negligence — ■ for the rule is well settled that ‘The driver of a car following a few feet behind another, under circumstances such that he should anticipate the possibility of obstruction or trouble of some sort, should have his car under such control or proceed at such a rate of speed that he can stop at once if the car in front stops.’
“It should have been obvious to Mrs. Streckfus, in view of the general traffic congestion at the crossing, that the Vienne car might be required to come to a sudden stop at any moment. Therefore, she should have had her car under such control that it could have been stopped immediately. Nor do we think that Miss Marguerite Vienne can be said to be guilty of contributory negligence, even if it be conceded that she failed to give a hand signal prior to making the alleged abrupt stop. Such a failure on her part, in our opinion, had absolutely no causal connection with the accident as she was entitled to believe, in view of the traffic conditions presented, that the driver of the car to her rear would anticipate that an abrupt stop might be required.”
Nor does the record support the contention that plaintiff’s actions confronted defendant’s driver with a sudden emergency. *713 To start from "stop” and proceed slowly, followed by a reduction in such speed, or even a complete stoppage in a distance of a car’s length, could not be correctly said to be sudden or to constitute an emergency to a following vehicle operating at a proper speed and at a safe distance to the rear.
From our review of the record, the conclusion appears irresistible that defendant’s driver was negligent in not maintaining a proper lookout and in following plaintiff’s vehicle at an unsafe distance, and that his negligence constituted the sole cause of the accident.
Remaining for consideration is the matter of an award to compensate plaintiff for the injuries sustained. From the scene of the accident, plaintiff and his passengers returned to his place of business. Within an hour and a half, however, following the accident, plaintiff was seen by Dr. James H. Eddy in the emergency room of the Schumpert Sanitarium. At that time plaintiff complained of pain in his neck, but upon examination the doctor noted no muscle spasm or limitation or loss of motion in the neck. The symptoms were purely subjective and, in the doctor’s opinion, insufficient to warrant further examination. However, on the employment of counsel, plaintiff was directed to Dr. Ford J. Macpherson, an orthopedist. On the second day following the accident, plaintiff was examined by Dr. Macpher-son, who found plaintiff had sustained a 50 percent limitation of motion in the cervical spine, pain on straight leg-raising tests, tenderness at the lumbosacral joint and at the base of the skull, and pain on pressure upon the muscles in that area. The doctor’s diagnosis was a moderately severe cervical sprain and a minimal sprain of the low back muscles. Plaintiff was admitted to the hospital, where he remained four days. He was given sedatives and administered mild physiotherapy and traction for the neck. No bases were found, however, for subsequent complaints. Many of these were said to be anatomically impossible and, in the doctor’s opinion, made to impress or to deceive.
We are not impressed that plaintiff’s injuries are serious or that there was any prolonged effect therefrom. For the injuries sustained, we think the sum of $2,500.00 suffices as adequate compensation.
In addition, plaintiff established special damages in the form of medical expenses in the sum of $579.23. Loss of wages at the rate of $400.00 per month for two months was also established. For this loss plaintiff should recover the sum of $800.00.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
Accordingly, there is now judgment in favor of plaintiff, Larry D. Murray, against the Shreveport Transit Company, Inc., for the full sum of $3,879.23 with legal interest thereon from judicial demand until paid, and for all costs.
Reversed and rendered.