GLADNEY, Judge.
In this ex delicto action Lamar Goodman and his wife Elsa Goodman sue for the death of their ■ son Joel, age 10, and for personal injuries received by their daughter Cheryl, age 9, allegedly as a result of the negligent operation of a truck being driven by Louie Boyle. The accident occurred August 30, 1964 at about 1:45 o’clock P.M. on Steele Street in the City of Winnsboro. Louie Boyle, his wife, Louise H. Boyle, and Southern Farm Bureau Casualty Insurance Company, were named defendants. Louise Boyle was subsequently dismissed in appropriate proceedings and is no longer a party to this suit. On March 28, 1966 the plaintiffs filed a supplemental petition making Cheryl Goodman a party plaintiff appearing through her father as Administrator. This latter pleading was met by a plea of prescription of one year predicated on LSA-C.C. Art. 3536 which was sustained. Defendants denied negligence and plead contributory negligence.
The case was tried on its merits and judgment rendered rejecting plaintiffs’ demands, the court finding an absence of actionable negligence. The plaintiffs have appealed. Lamar Goodman and his minor daughter Cheryl accidentally drowned after the trial of this case and Elsa Goodman, Richman Goodman and Bernice Nelson Goodman were substituted as the heirs at law of Lamar Goodman in his individual capacity and as Administrator of the Estate of Cheryl Goodman.
Steele Street, an east and west residential street, had as of the date of the accident blacktopped surfacing approximately 19 feet in width with abutting shoulders, each about three and one-half feet wide. The two children were riding on Joel’s bicycle traveling west accompanied by a companion who was likewise riding a bicycle proceeding in the same direction in the left traffic lane. Joel was peddling the bicycle with Cheryl in front of him on the crossbars and moving at a slow rate of speed. The bicycle was of the type built for only one passenger and the crossbars on which Cheryl was riding connected the handle bars to the seat base. Just prior to the accident they were being overtaken by Boyle who was driving a pick-up truck. As the truck approached the children another truck driven by Fred F. Neilsen was *883 proceeding in an easterly direction meeting the Boyle truck and the children.
Boyle testified that he was driving approximately 20 miles per hour when he first saw the children and after seeing them, reduced his speed to about IS miles per hour. When the truck approached within 60 or 70 feet of Joel’s bicycle, he peddled his bicycle onto the right shoulder and proceeded along the street. Cheryl Goodman stated she saw Boyle’s truck coming and told Joel to move over; in obedience to her instructions he did ride over on the shoulder where he continued in a westerly direction. Both Boyle and Neil-sen testified that Boyle’s truck was occupying the approximate center of his lane which would place it some two feet from the right edge of the blacktop street. The testimony further indicates that the Goodman bicycle was from one and one-half to two feet from the edge of the blacktop. Neilsen and Boyle stated that Boyle made a normal passing of the children and after the front of the truck had passed the bicycle it turned or veered into the side of the Boyle truck; and further, that the truck did not change its direction to the right or left as Boyle drove by the children. There is some uncertainty as to just what caused Joel Goodman to be thrown from his bicycle and his head to strike the blacktop. Boyle testified he heard a “thump” on the right door of his truck and afterwards found a slight, almost unnoticeable dent. The bicycle was not damaged and came to rest on the shoulder. Cheryl testified that the bicycle was struck by the bumper of the truck and that she jumped off of the bicycle. Immediately after the accident Boyle stopped perhaps within one-hálf of or a full truck length, and finding that Joel was not breathing administered mouth-to-mouth resuscitation.
Joel received serious injuries to his head and the upper part of his body and though he received extensive medical, surgical and hospital care, he expired on October 3, 1964, some 34 days after the accident. Cheryl received an injury to her ear and other minor personal injuries which satisfactorily healed.
A contention seriously made is that Boyle was driving while under the influence of liquor. He was charged with DWI immediately after the accident by the Deputy Marshal. Later he forfeited his bond. The Deputy Marshal testified that he could not swear Boyle was drunk. The two other witnesses, Effie Brashear and Neilsen both testified they smelled liquor on Boyle’s breath but that in their opinion he was not under its influence. Boyle testified that he had one highball before he had his dinner which was approximately an hour prior to the accident.
The question of whether or not Boyle was guilty of actionable negligence must be resolved from a correct finding and proper evaluation of the facts. A number of errors has been assigned to the judgment complained of. These include the finding that Boyle was not under the influence of intoxicating liquor as a factor relating to his fault in colliding with the bicycle; that Boyle was not negligent in driving his truck within two or three feet of children riding a bicycle when the surface of the shoulder was rough and uneven; that Boyle was free from fault in causing the accident; and that the two children were negligent as a factor causing the accident. The court is further charged with error in sustaining a plea of prescription to the demand of Lamar Goodman on behalf of Cheryl Goodman and, alternatively, in failing to find that Boyle, under the doctrine of discovered peril, did not have the last clear chance of avoiding the accident.
The trial court after weighing the testimony of the several witnesses concluded that there was insufficient evidence upon which it could predicate a finding that Boyle was under the influence of intoxicants which affected his conduct at the time of the accident. The trial judge also found Boyle had made a safe passing movement when there was a distance be *884 tween the truck and the bicycle of some three or more feet, with respect to which he commented: “ * * * there appears to be nothing unusual about the situation — a motor vehicle passing a bicycle, being operated on the shoulder of a highway, is rather a normal operation that occurs many times every day.” In objecting to the finding of the court that Boyle was free from negligence it is asserted that the grassy shoulder was rough and uneven, there being a lateral dent or depression in the shoulder which permitted water to drain off the road, and that Boyle, prior to passing, noticed the bicycle was weaving back and forth on the grassy shoulder. It is argued that these circumstances provided sufficient reason to forewarn Boyle of danger. Plaintiffs, however, failed to establish the foregoing facts, and in consequence there is no basis for the inference of fault.
The trial judge in his reasons for judgment held:
"A great preponderance of the evidence in this case clearly shows that Mr. Boyle made a safe passing movement by the Goodman children, with the front end of his truck, and that the Goodman children were approximately three feet or more away from the side of his truck as he drove by them, when, by some act of negligence on the part of Joel Goodman, or by the action of Cheryl Goodman in jumping off the bicycle (as she testified she did), Joel fell into the side of the pick-up truck, which unfortunately happened to be in that particular place at that particular instant.
“It does not appear to this Court that the manner in which Mr. Boyle was driving, his rate of speed, his look-out, his attentiveness, in fact none of his actions in any manner, contributed to or was the cause of the accident in question.
“This Court knows of no case which would require the driver of a motor vehicle, when overtaking bicycle riders, to bring his vehicle to a complete stop, whether the riders of the bicycles are children or otherwise. It does not appear to this Court that Louie Boyle was negligent in this instance, but that this regrettable accident was caused solely by the act of the children in falling into the side of the Boyle vehicle at the very moment he, Mr. Boyle, was making a very careful and perfectly lawful passing movement.”
The Louisiana Highway Regulatory Act as amended and reenacted in its entirety by Acts 1962, No. 310 now consists of LSA-R.S. 32-1-32:399. Section 75 thereof replaces the former R.S. 32:233 § C which prohibited the overtaking motorist from driving to the left side of the center line unless such overtaking and passing could be made in perfect safety, and contained the following provision:
“Whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing.”
The quoted portion of former Section 233 is no longer a part of the present statute, having been repealed by Act 310 of 1962. Therefore inapposite herein are the following cases: Fontenot v. Wood, La.App., 140 So.2d 34 (3rd Cir. 1962); Felt v. Price, 240 La. 966, 126 So.2d 330 (1961); and Thornton v. F. Strauss & Son, Inc., 240 La. 455, 123 So.2d 885 (1960).
As reenacted the new law subjects the bicyclist to the same responsibilities as a motorist and prohibits the use of a bicycle to carry more persons at one time than the number for which it is designed and equipped. In the instant case plaintiffs have failed to prove any negligence on the part of Boyle. As pointed out by the trial judge it becomes necessary most frequently for a motorist to pass within a few feet of a minor riding a bicycle. The question of fault must be examined in the light of the proven facts de *885 veloped in each case. Indicative of such cases where negligence was not found are: Lambert v. United States Fire Insurance Company, La.App., 148 So.2d 406 (1st Cir. 1962); Ferrara v. Allstate Insurance Company, La.App., 152 So.2d 252 (4th Cir. 1963); Bonvillian v. Dauphin, La.App., 166 So.2d 40 (4th Cir. 1964. Writ refused), and Frank v. Guilbeau, La.App., 179 So.2d 450 (3rd Cir. 1965).
Plaintiffs further argue that Boyle had the last clear chance under the doctrine of discovered peril asserting that plaintiff did observe the children from some distance, the approaching vehicles, the closeness of his path to that of the bicycle and a “wobbling” of the bicycle on the uneven shoulder and with such realization should have either stopped or retarded his truck so that he could pass without being restricted by the oncoming automobile driven by Neilsen. The doctrine invoked was stated by this court in Evans v. Thorpe, La.App., 175 So.2d 418 (1965):
* * * The last-clear-chance doctrine is a humanitarian doctrine of discovered peril based on the principle that no one having an opportunity to avoid injury to another, after becoming aware of such person’s perilous position, or by the exercise of due diligence could and should have become aware thereof, may negligently injure him though he is at fault.
“However, before this doctrine may be given effect, three essential facts must be established: first, that plaintiff was in a position of peril of which he was either unaware or unable to extricate himself ; second, that the defendant was in a position to discover plaintiff’s peril; and, third, that, at such time, the defendant could have, with the exercise of reasonable care, avoided the accident. * * ” [175 So.2d 418, 423-24]
As stated above the facts did not establish that the Goodman children were in peril or that a state of danger existed prior to the passing. The conclusion has been reached both by the trial court and this court that the accident occurred when the Boyle truck had partially passed the children and the bicycle suddenly swerved and contact was made with the truck. No opportunity was presented for Boyle to discover the peril and take evasive measures with respect thereto. The doctrine is inap-posite herein.
With our finding that there was no actionable negligence on the part of Boyle it becomes unnecessary to inquire into the special plea of contributory negligence or the plea of prescription of one year.
The judgment of the trial court is affirmed at appellants’ cost.