281 So.2d 820 (1973)
Clayton A. SCRANTZ
v.
AETNA CASUALTY AND SURETY COMPANY et al.
No. 9433.
Court of Appeal of Louisiana, First Circuit.
June 29, 1973.
Rehearing Denied August 23, 1973.
*821 Ben F. Day, Baton Rouge, for appellant.
Wm. L. Wilson, Baton Rouge, for appellees.
Before SARTAIN, BLANCHE and WATSON, JJ.
BLANCHE, Judge.
Plaintiff, Clayton A. Scrantz, instituted this suit against defendant, Mrs. Martha B. Whittington, and her liability insurer, The Aetna Casualty and Surety Company (erroneously referred to as "Aetna Life & Casualty Insurance Company"), seeking damages for personal injuries sustained by him as a result of a collision between his 1971 Chevrolet pick-up truck and defendant's 1965 Plymouth Valiant automobile. The collision occurred at approximately 3:00 P. M. on February 1, 1971, at the intersection of Old Hammond Highway and Flannery Road in East Baton Rouge Parish.
The facts as found by the trial court show that at the time of the accident the weather was clear and dry. Both Mr. Scrantz and Mrs. Whittington were proceeding in an easterly direction on Old Hammond Highway, which is a two-lane asphalt road. The posted speed limit on Old Hammond Highway is fifty miles per hour and there is some residential development in the area. Flannery Road dead-ends into Old Hammond Highway from the north and thereby forms a "T" intersection. Double yellow lines prohibit passing on Old Hammond Highway at this particular intersection.
Plaintiff, who was proceeding ahead of defendant, stated that he intended to make a left turn on Flannery Road. Plaintiff's testimony indicates that as he approached the intersection, he looked in his rear view mirror and saw a truck attempting to pass him. Plaintiff stated that he had his left-turn signal on at that time, and after the truck passed he started his left turn. Plaintiff testified that he was proceeding at a very slow speed at this point. He looked into his mirror again but it was too late because defendant was attempting to pass him. The accident ensued.
Defendant, Mrs. Whittington, stated that she lived in the area and knew that she was passing at an intersection. She also was aware of the double yellow lines on the roadway. She stated that she had been following plaintiff for some time and did not see the truck pass Mr. Scrantz just prior to the accident. She further testified that she did not observe any turn signal on the Scrantz truck prior to the accident, although plaintiff pointed out to her that his turn signal was on and blinking after the accident. Mrs. Whittington also stated that when she pulled out to pass she blew her horn.
Sergeant Hennessey J. Goudeau, Jr., of the Baton Rouge City Police investigated the accident. He arrived at the scene shortly after the accident and testified that he found debris which indicated the point of impact to be two feet east of the west parallel line of Flannery Road and two feet north of the center line of Old Hammond Highway. He determined that the right front of defendant's automobile struck the left side of plaintiff's pick-up truck, with the primary impact being received by the left front bumper of the pick-up. As to skid marks, Sergeant Goudeau testified that defendant left fourteen *822 feet of skid marks prior to the collision, all in the westbound or passing lane of Old Hammond Highway, and thirty-nine feet after impact. The plaintiff's truck showed fifteen feet of skid marks from the point of impact to where it stopped. Officer Goudeau estimated the speed of defendant's automobile at approximately forty-five miles per hour.
Upon these facts, the trial court found that Mrs. Whittington was negligent in attempting a passing maneuver at the intersection. However, the trial court rendered judgment in favor of defendants and dismissed the plaintiff's suit on the basis that plaintiff was guilty of contributory negligence in failing to ascertain that his left turn could be safely made. From this judgment plaintiff has devolutively appealed. We affirm.
On appeal plaintiff sets forth three specifications of error, contending that the trial court erred (1) by failing to apply the so-called "urban rule" to this left-turn situation, (2) by failing to apply the case law which exonerates the left-turning motorist from contributory negligence in situations where the overtaking motorist is passing over a double yellow line, and (3) by failing to apply the general rule that contributory negligence is not a defense against gross, willful and wanton conduct.
The trial court held both drivers negligent. There is no question concerning the negligence of Mrs. Whittington in attempting to pass at an intersection and in passing in a no-passing zone. The only issue before us is whether or not Mr. Scrantz was contributorily negligent.
It is well settled that left turns are extremely dangerous and it is incumbent on a motorist attempting such a maneuver not only to signal his intention to do so, but also to be alert to oncoming and overtaking traffic, and not attempt such a maneuver without first ascertaining that the turn can be safely made. American Road Insurance Company v. Brown, 269 So.2d 539 (La.App. 1st Cir. 1972); LSA-R.S. 32:104.
With regard to this rule which the trial court clearly applied to plaintiff's actions in the instant case, plaintiff contends that the above-stated duty imposed on the left-turning motorist is tempered in urban areas by the principle that a motorist has the unquestioned right to assume that following traffic will observe all the duties imposed by law upon them. In support of this contention plaintiff cites the cases of Porter v. Sprawls, 227 So.2d 792 (La.App. 4th Cir. 1969); Moncrieff v. Lacobie, 89 So.2d 471 (La.App. 1st Cir. 1956); and Procell v. Strange, 203 So.2d 739 (La.App.3rd Cir. 1967), writs refused, 251 La. 688, 205 So.2d 606 (1968). We find these cases inapposite to the case at bar, as in most automobile accidents each case must stand on its own peculiar facts and the essential inquiry in each of the cases referred to is whether the left-turning motorist was a proximate cause of the accident or in any way contributed thereto. Further, as noted in each of the cases cited by counsel, a left-turning motorist was exonerated of any negligence in connection with the accident. In the case at bar there is no evidence that the passing motorist was speeding and we find that no preponderance of the evidence was established that plaintiff's left turn signal was operative at the time of the accident.
We find no justification for applying a reduced standard of care to the plaintiff in the instant case merely because the accident occurred in an area of some residential development. In our view the trial court was correct in applying the well-established high degree of care imposed on motorists who undertake a left-turning maneuver.
Plaintiff next contends that he should be exonerated from contributory negligence due to the fact that Mrs. Whittington violated the double yellow lines and attempted to pass in a no-passing zone. Plaintiff argues that a left-turning motorist should *823 not be held to anticipate such a violation of the law by an overtaking motorist.
While a motorist proceeding in compliance with the law can assume that other motorists will likewise observe the law, that motorist can indulge in this assumption only until he sees or should see that the other motorist has not observed or is not going to observe the law. Waters v. Pharr Brothers, Inc., 228 So.2d 91 (La.App. 2nd Cir. 1969), writs refused, 254 La. 1101, 229 So.2d 113 (1969); Hughes v. Whitten, 276 So.2d 405 (La.App. 2nd Cir. 1973).
Plaintiff testified that as he approached the intersection he looked into his mirror and saw a truck passing him. Plaintiff stated that after the truck passed he commenced his turn. He looked again to his rear but it was too late because defendant had started to overtake him.
A left-turning motorist cannot discharge his burden of ascertaining whether the turn can be made in safety by making his observation some distance from the intersection, but he is required to look to his rear immediately before attempting the turn. Ulmer v. Travelers Insurance Company, 156 So.2d 98 (La.App. 1st Cir. 1963). The physical facts clearly show that Mrs. Whittington was already in the passing lane and overtaking the plaintiff at the time he commenced his turn. Plaintiff failed to look to his rear again just prior to commencing his turn. Had he looked again, as he was required to do, he would have seen the defendant's vehicle overtaking him in violation of the no-passing zone. At this point plaintiff could no longer indulge in the presumption that the overtaking motorist would obey the law, and his actions in commencing his left turn when it was unsafe to do so amounted to contributory negligence on his part.
In support of the contention that Mrs. Whittington's violation of the double yellow line exonerates him from contributory negligence, plaintiff relies on the cases of Faulkner v. Ryder Tank Lines, Inc., 135 So.2d 494 (La.App. 2nd Cir. 1961), certiorari denied, February 2, 1962, and Haygood v. Hebert, 225 So.2d 405 (La.App. 2nd Cir. 1969). The cited cases are factually different from the instant case. In each of those cases the left-turning motorist had no indication that the overtaking motorist was about to violate the law and attempt to pass him in a no-passing zone. As pointed out above, had plaintiff in the case at bar looked to his rear just prior to commencing his turn, he would have seen the Whittington vehicle, already in the passing lane, overtaking him. Additionally, plaintiff can hardly testify that Mrs. Whittington's attempt to pass him on double yellow lines was surprising inasmuch as he had just been passed by another vehicle only momentarily before the accident occurred.
In Waters v. Pharr Brothers, Inc., supra, our brothers of the Second Circuit held on rehearing that a left-turning motorist was guilty of negligence in failing to see an overtaking motorist who had violated a no-passing zone and attempted to pass prior to the commencement of the left turn. That Court stated its findings of fact and holding as follows:
"* * * Therefore, when Mrs. Waters gave her signal to turn left approximately 300 feet before reaching the side road she had a right to indulge in the assumption Finklea would not violate the law by passing in a prohibited zone. However, she could only indulge in this assumption until she saw or should have seen him crossing the double yellow lines and making his passing maneuver. She says she did not see him overtaking and passing her; however, she should have, since the uncontroverted facts show his truck was in the left lane before she commenced her left turn. Therefore, she was derelict in her duty in failing to maintain a lookout to her rear before attempting her left turn. * * *" (Waters v. Pharr Brothers, Inc., 228 So.2d at 95)
Substantially the same facts are presented in the instant case. We find no error *824 on the part of the trial court in failing to exonerate plaintiff from contributory negligence, even though Mrs. Whittington was attempting to pass in violation of a no-passing zone.
Lastly, plaintiff contends that the actions of the defendant in passing at an intersection and in violating a no-passing zone constitute acts of gross negligence and therefore contributory negligence should not be a bar to his recovery. In support of this, he cites a case applying a common law rule which, indeed, does state that where willful or wanton conduct is the proximate cause of an accident, contributory negligence does not bar recovery. Even though the trial court found that Mrs. Whittington's negligence "almost constituted gross negligence," the finding is short of one of gross negligence. We do not find her guilty of willful and wanton negligence and do not therefore find it necessary to consider plaintiff's argument.
Accordingly, for the above and foregoing reasons, the judgment of the district court is affirmed, at plaintiff's costs.
Affirmed.