317 So.2d 7 (1975)
Dalton R. MORGAN
v.
LUMBERMEN'S MUTUAL CASUALTY COMPANY and Mark N. Adams.
Dalton R. MORGAN
v.
UNITED STATES FIDELITY & GUARANTY COMPANY et al.
Nos. 10288, 10289.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
Rehearing Denied August 11, 1975.
*8 Newton & Baham, Hammond, Autley B. Newton, for plaintiff-appellee.
Hammett, Leake, Hammett, Hayne & Hulse, Donald A. Hammett, New Orleans, for defendants-appellants.
Pittman & Matheny, Hammond, Tom H. Matheny, for defendant-in-reconvention-appellant.
Before SARTAIN, ELLIS, and BARNETTE, JJ.
*9 BARNETTE, Judge.
These two cases, consolidated for trial and appeal arose out of an automobile-truck collision February 7, 1972. A single judgment was rendered covering all the principal demands and incidental issues litigated in both cases.
The plaintiff in both cases is Dalton R. Morgan, the truck driver-employee who sustained injuries in the accident. The first numbered and entitled suit is a tort action by Morgan against Mark N. Adams, driver of the automobile, and his liability insurer, Lumbermen's Mutual Casualty Company, for damages on account of the personal injuries sustained. He alleged negligence on the part of Adams, driver of the automobile which collided with his truck.
In that suit Lumbermen's, as subrogee of Adams, reconvened seeking judgment against Morgan and United States Fidelity and Guaranty Company (U. S. F. & G.) the insurer having coverage of the truck, in the amount of $3,586.32 representing its loss on account of damage to its insured's (Adams) automobile.
In that suit also, U. S. F. & G., the workmen's compensation insurer of Morgan's employer, Union By-Products Company, brought a third party action against Lumbermen's and Adams seeking recovery of compensation paid and being paid to Morgan and for medical expenses paid. Also third party petitioner, U. S. F. & G. seeks recovery of $2,950 and $250 alleged to have been paid respectively to two passengers in the Adams automobile for alleged injuries.
In the second numbered and entitled suit (filed after U. S. F. & G. had discontinued compensation payments) the plaintiff, Morgan, seeks recovery against his employer, Union By-Products and U. S. F. & G. alleging total and permanent disability.
The single judgment rendered in the consolidated cases contained as follows: (1) Judgment in favor of the plaintiff, Morgan, and against Adams and Lumbermen's, defendants in the tort suit, in solido, in the total sum of $40,000. Since Lumbermen's policy was only $10,000, it was cast in solido with Adams to that extent only. Adams individually was cast for the $30,000 excess. (2) Judgment in favor of Morgan and U. S. F. & G. and against Lumbermen's denying and dismissing its reconventional demand. (3) On the third party demand of U. S. F. & G. judgment was rendered in its favor against Lumbermen's and Adams, in solido, for $6,623.50 for workmen's compensation paid to Morgan;[1] for $3,950[2] as reimbursement of amount alleged paid to Diana Adams and $250 for amount paid to Sandra Adams. (4) Judgment was rendered in the workman's compensation suit in favor of Morgan and against his employer, Union By-Products and U. S. F. & G., in solido, for total permanent disability at $49 per week not to exceed 500 weeks with credit for payments made to March 13, 1973 and subject to further credit for sums paid by Lumbermen's and Adams. Further, there was judgment for the statutory penalty and attorney's fee in the amount of $3,500. (5) All costs were assessed against Lumbermen's including medical deposition fees which were fixed and total $445.
Appeals were taken in the consolidated cases by: (1) Lumbermen's Mutual Casualty Company and Mark N. Adams. (2) United States Fidelity and Guaranty Company.
The issues presented on this appeal in the tort suit involve primarily the liability and quantum of damage; and in the workmen's compensation suit, liability for compensation beyond that paid to March 13, 1973, and the issue of penalty and attorney's fee.
*10 The plaintiff, Dalton Morgan, at the time of the accident involved in this case, was employed by Union By-Products, Inc. of Baton Rouge. One of his duties was driving a truck that made pickup of dead poultry at various chicken farms in the area for delivery to the Union By-Products rendering plant in Baton Rouge. On the date of the accident, February 7, 1972, Morgan was traveling west on U.S. Highway 190 toward Baton Rouge. Near milepost 224, during an attempted left turn onto an unnamed and unmarked parish road, the plaintiff was struck by an overtaking 1971 Lincoln, also traveling westerly, driven by Mark N. Adams. The car was also occupied by Diana and Sandra Adams. The truck that Morgan was driving was a specially designed type of small garbage truck.
The only eyewitness testimony in the record before us is that of Morgan and Mark N. Adams.[3] Fred Louis Piazza, who was a Louisiana State Trooper at the time of the accident, testified as the investigating officer.
Morgan testified that he was making a lefthand turn off of U.S. 190 when he was struck in the back of his truck by the automobile. He stated that before he made the turn he had the truck blinkers on to signal a left turn intention. The truck has large outside mirrors, one on each side of the cab. Morgan stated he looked in the rear view mirror but did not see the Adams vehicle.
From the testimony of the investigating officer, Piazza, it appears that the "T" intersection of the unnamed road is obscure, and that there are no traffic control signs warning of it. There were no markings whatsoever, except the standard dash line in the center of U.S. 190 and a 60 miles per hour speed limit sign in the vicinity. U.S. 190 in the area is straight and level with no obstructions to block the view of either driver. There is a wide shoulder on each side of the highway.
The Trooper testified that the Adams vehicle left approximately 84 feet of skid marks, starting from a passing position in the westbound lane, diagonally across the eastbound lane to the intersection where the Adams car struck the truck and came to rest. He testified that the point of impact was at the intersection; part in the eastbound lane of U.S. 190, the shoulder, and the east part [northbound lane] of the unnamed parish road. The rear of the truck was still in the eastbound lane of U. S. 190.
The testimony of this witness, together with the exhibit filed, concerning the physical evidence found at the scene of the accident supports the conclusion that Morgan began his left turn maneuver some distance before reaching the point where the parish road comes into the Highway and that he moved with reducing speed into and finally almost across the eastbound traffic lane before the impact. It further shows that Adams realized too late that the truck was turning left and that he was going too fast to alter his passing attempt when it became apparent that the truck was making a left turn from the highway and the only thing he could then do in the emergency, thus created, was to apply his brakes.
Adams testified that immediately prior to the accident he was traveling west on U.S. 190 returning to his home in Lake Charles. There was no traffic behind him and the road was clear for a mile or so in front. There were no vehicles parked anywhere on the shoulder nor was there anything to indicate the presence of an intersecting road. He said he was running on his cruise control and: "It was set at 60, but to pass the truck I accelerated faster to pass and then just a few seconds later I see the truck start to make a slowly turn to the left and then I just hit my brakesyou *11 know, I guess I must have panicked myself." Adams testified that when he applied his brakes he tried to turn back to the right, ". . . but by the time I'd got there it justit was fast enough that it just happened to hitI remember trying to turn back to the right, but I didn't have time and we had collided."
Adams further testified that there was no turn indicator visible to him.
The trial court found Adams was negligent in the operation of his vehicle and that his negligence was a proximate cause of the accident. With this we agree. There were no witnesses to the accident and we have only the testimony of the two drivers, from which it is impossible to tell exactly how far Adams had progressed, if at all, in his attempt to pass the truck as Morgan commenced his turn. Adams' testimony on this point is of little help and Morgan did not know and could not have known because he did not see the Adams vehicle until almost the instant of impact.
As a general rule, the driver of an overtaking vehicle, upon approaching another one from the rear is under a duty to exercise a great deal of care in keeping a lookout and to make certain that no change of course of the preceding vehicle is indicated. Burns v. Evans Cooperage Co., 208 La. 406, 23 So.2d 165 (1945); Jones v. Lungaro, 231 So.2d 60 (La.App. 1st Cir. 1970); Evans v. Thorpe, 175 So.2d 418 (La.App. 2nd Cir. 1965).
It is not clear from the evidence whether or not Morgan gave a left turn signal, either timely or at all. It is clear though, that Adams did not observe and recognize any such signal. Adams stated in his testimonyhe would not have passed had he noticed a left turn blinker.
Whether or not Morgan gave a left turn signal, Adams was negligent in that he knew, or should have known, that the truck in front of him was decelerating and had reached a relatively slow speed of 15-25 miles per hour. This should have put Adams on notice that the preceding vehicle was no longer merely continuing on its course down the highway, but was preparing either to stop or turn. To continue his rapid overtaking and the subsequent passing maneuver under these conditions was negligent and a proximate cause of the accident. Evans v. Thorpe, supra; Johnson v. Wilson, 97 So.2d 674 (La.App. 1st Cir. 1957). On writs, the Supreme Court affirmed the negligence of the overtaking driver, but also found the left turning driver contributorily negligent. 239 La. 390, 118 So.2d 450 (1960).
We are fully cognizant of the manifest error rule in our jurisprudence and the great weight which should be given to the opinion of the trial judge in resolving fact questions of this kind. With the judicial restraint which this rule imposes upon us, we find, however, that the trial judge was in error in his failure to find negligence on the part of the plaintiff, Morgan, and that his negligence was a material contributing cause of the accident, barring his recovery of damages.
It is well settled that a motorist making a left turn must meet a high standard of care in his execution of the turn maneuver. Motors Insurance Corporation v. Howell, 266 So.2d 240 (La.App. 2d Cir. 1972); Wilkinson v. Fidelity and Casualty Company of New York, 244 So.2d 675 (La.App. 4th Cir. 1971), writ refused 258 La. 362, 246 So.2d 683 (1971). A person who attempts to make a left turn must ascertain before doing so that the turn can be made safely without endangering other motorists who are in close proximity. Caution must be exercised in the light of all circumstances, which includes the nearness, speed and direction of other vehicles. This includes making a proper observation to the rear for passing traffic just prior to the beginning of the left turn. Scrantz v. Aetna Casualty and Surety Company, 281 So.2d 820 (La.App. 1st Cir. 1973); Ulmer *12 v. Travelers Insurance Company, 156 So.2d 98 (La.App. 1st Cir. 1963).
The facts are clear from the record that here the conditions and circumstances were ideal for observation rearwardthe plaintiff had large, outside mirrors on both sides of his truck; the road was straight, level and clear of any obstruction for a substantial distance; there were no other vehicles in close proximity; the weather conditions were good. The plaintiff failed to observe the Adams car which we know was behind him somewhere. There is no explanation of his failure to see that which he should have seen and to proceed accordingly. We can only conclude that he was negligent in not being aware of the overtaking vehicle. Morgan said that he looked in his rear view mirror prior to turning but to look and not see that which was obvious is the equivalent of not looking at all.
Considering the speed differential between the two vehicles, it is extremely unlikely that the Adams car was so close to the truck as to be in a blind spot at the time Morgan made his alleged rearward observation.
The court in a similar case, McCallum v. Adkerson, 126 So.2d 835 (La.App. 2d Cir. 1961) said:
"In the absence of a showing of excessive speed on McCallum's part, there is no acceptable explanation for defendant's admitted failure to see plaintiff's vehicle until after the collision had occurred. The conclusion is inescapable that had defendant looked to the rear immediately prior to beginning his turn he would have observed plaintiff's passing maneuver. We are, therefore, in complete accord with the lower court's finding that defendant was guilty of negligence which was a proximate cause of the accident." 126 So.2d at 837.
We, therefore, hold that Morgan's recovery of damages in the tort suit must be denied because of his contributory negligence.
We will now address ourselves to the issues raised in his suit for workman's compensation.
Morgan testified that he was thrown sideways in the cab of his truck by the impact of the collision causing his head to hit the cab and his hips to strike the gear shift lever. The accident happened in the course of his employment and he was paid weekly compensation for the disability resulting from the injuries sustained until March 13, 1973, when payments were discontinued. Hence this suit for further compensation and for penalty and attorney's fees.
After the accident, Morgan suffered pain in his head, in the left side of his neck, and in the back. On the day of the accident he went to see Dr. Robert M. Starns, a family practitioner and the "company's" doctor. Dr. Starns prescribed muscle relaxants and instructed the plaintiff to return the next day, which he did with the continuing complaints of pain. Plaintiff was then sent to the hospital for x-rays. The x-ray showed probable degenerative disease of the fifth lumbar intervertebral disc without evidence of nerve root compression. Dr. Starns continued to see plaintiff through February 29, 1972 (he did not see him again until Sept. of 1973) and he continued to be in pain. As of February 29, Dr. Starns still diagnosed plaintiff as having a soft tissue problem.
In the meantime, from February 9, 1972 thru August 6, 1972, Mr. Morgan had been seeing Dr. Daniel S. Sinclair, an orthopedic specialist. Dr. Sinclair also had access to and examined the same x-rays. He also concluded that a degenerative process was indicated, but he did not feel that Morgan was in enough pain to warrant surgery, at least during the five months the plaintiff was his patient.
As to the connexity of the accident and the plaintiff's back problems, Dr. Sinclair noted that there was some degree of degeneration prior to the accident. He further *13 stated that ". . . the injury certainly didn't help it any. It aggravated it, but I think it created symptoms for a while; but, I feel that no significant change took place as a result of the accident."
Morgan last visited Dr. Sinclair August 6, 1972. The Doctor was of the opinion that as of that date there was no significant disability and that Morgan ". . . was approximately back to the status that he was prior to the injury . . . ."
In August of 1972, plaintiff began seeing Dr. Thomas B. Flynn, a neurosurgeon. Dr. Flynn initially performed a general neurological examination, the results of which were normal, and a specific examination of the back and lower extremities. The results indicated that at the time there was an irritation of the L-5 nerve root. The plaintiff ". . . seemed to be having significant continued discomfort . . ." and a lumbar myelogram indicated a disc protrusion. Surgery was performed on October 17, and the 4th lumbar disc on the right side was removed. As of December 4, the patient's lower back was improving and there was no neurological deficit. On January 15, 1973, the patient was referred to Baton Rouge General Hospital for physical therapy.
Dr. Flynn next saw the plaintiff on February 12, 1973 at which point he testified that Morgan seemed to be having a considerable amount of difficulty, primarily with pain in his back. On March 12, Dr. Flynn saw the plaintiff again. He had progressed to such extent that he was released to return to work doing light duty with instructions not to lift anything in excess of 50 pounds.
On plaintiff's next regular visit to his office on June 4 for examination, Dr. Flynn observed a moderate degree of paraspinous muscle spasm and a ". . . rather prominent bruising over the front part of his [Morgan's] thighs on both sides. . ." Morgan was complaining of midlow back pain and upon inquiry ". . . indicated that he had dropped a wheelbarrow onto his legs, which he had been lifting. . ." It was the Doctor's opinion that he had lifted something heavy and this ". . . might have been or at least could have been a cause for his recurrent symptoms."
Dr. Flynn next saw plaintiff on July 3. He had pain in his right leg which was noted as a new symptom. The plaintiff last saw Dr. Flynn on October 15, 1973. He had persistent leg pain and Dr. Flynn felt that, in light of this and his other difficulties, there was the possibility of a recurrent disc rupture. The patient was advised to undergo another myelogram. However, because of unrelated illness in the plaintiff's family it was not convenient for him to undertake this and a delay was asked for. There is no evidence in the record that a subsequent myelogram was performed.
Dr. Flynn concluded that plaintiff would probably have continued difficulty without constructive treatment and that Morgan was disabled for the type of work he was doing. However, he felt that there would have to be followups before it would be considered permanent.
A pre-existing defect or disease is compensable under the Workmen's Compensation Act where a sudden trauma causes the onset of symptoms that were not present prior to the injury. Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973); Jones v. Douglas Public Service, 264 So.2d 267 (La.App. 4th Cir. 1972). In awarding workmen's compensation to plaintiff, the trial court obviously thought this to be the case.
It is clear from the record that Morgan was afflicted with a degenerative process in his back prior to the accident. Degeneration was indicated as early as February 9, the date of the x-rays. This diagnosis was confirmed by later surgery. Such conditions do not occur overnight. It *14 is a fact question as to exactly what stage of degeneration was present prior to and at the time of the accident, whether or not this condition resulted in Morgan's disability, and whether or not the accident in any way aggravated it.
There is no evidence or any showing on the part of United States Fidelity and Guaranty that Morgan had any symptoms that pre-existed the accident, or that he was even aware of his condition. There was a showing in the record that Morgan was symptomatic after the collision and that eventual surgery resulted. There is a presumption that where there is an accident followed by disability without any intervening cause, the disability was caused by the accident. Gradney v. Vancouver Plywood Co., Inc., 299 So.2d 347 (La.1974); Johnson v. Travelers Insurance Co., supra. We agree with the trial court's finding that there was a compensable injury.
As to the wheelbarrow incident, appellant, U. S. F. & G., contends that when an employee willfully and unreasonably fails to cooperate in the treatment given him and this seriously retards his recovery and prolongs his disability, he cannot recover compensation beyond the period that would have been necessary for his recovery had he properly co-operated. This is a correct statement of the law, but the trial court justifiably found that there was no proof of Morgan's having violated the restrictions imposed upon him, or failed to cooperate in his treatment.
It is no more than speculation and assumption that the plaintiff attempted to lift a heavy load or engaged in any forbidden activity which seriously retarded his recovery and prolonged his disability. The testimony of Dr. Flynn that the plaintiff said he "dropped" the wheelbarrow on his legs is contradicted by Morgan's testimony that he was leaning on the wheelbarrow when it fell over. However, even assuming the plaintiff did in fact drop the wheelbarrow on himself, there is no evidence whether it was loaded or empty or that it weighed more than 50 pounds. There is no evidence that the wheelbarrow incident seriously retarded plaintiff's recovery and prolonged his disability.
The insurer paid plaintiff compensation at the rate of $49 weekly for the period February 7, 1972, through March 12, 1973. In its answer the defendant sought to justify its discontinuance of payments and alleged:
". . . plaintiff is able to perform the duties required for [a] truck driver or similar pursuit demanding comparable skill and strength . . . ."
and that Morgan
". . . was released by his physician to return for work and that he is, therefore, entitled to no more compensation."
The trial court found the discontinuance of payments to be arbitrary and without probable cause and assessed the statutory penalty and attorney's fees.
Generally when an insurance company bases its decision to discontinue compensation benefits on the report of a competent physician that an employee has recovered from his injuries to the point of ability to resume the duties of his employment, it will not be held liable for penalties and attorney's fees, since reliance on a medical report is with probable cause and not therefore arbitrary or capricious. The medical information which the defendant insurer acted on in this case was not unequivocal in its representation of Morgan's recovery to the point of ability to resume the duties of his regular employment.
Dr. Sinclair testified as follows:
"Q. When Dalton Morgan left your office on August the 6th, 1972, do you feel that he had the capacity at that time to return to work performing essentially the same duties that he did before, that of a truck driver, without significant pain or disabling pain?
"A. Yes, sir, I do."
*15 Notwithstanding Dr. Sinclair's opinion on August 6, 1972, Morgan remained under treatment of Dr. Flynn and on October 17, 1972 the corrective surgery was performed by Dr. Flynn. Morgan continued to receive his weekly compensation payments until March 13, 1973, when compensation was terminated, presumably, upon the report of Dr. Flynn, who testified that on March 12 he released Morgan to light duty with instructions not to lift weights of more than 50 pounds. This was at most a conditional or restrictive release.
It is clear that as of this date Morgan still could not perform his former duties as a truck driver which included the regular lifting of weights much in excess of 50 pounds. He was still, therefore, under disability to perform the duties of his employment.
Therefore, we find that the appellant was arbitrary and capricious and without probable cause within the meaning of R.S. 22:658 and the trial court was correct in assessing the statutory penalty and attorney's fee.
For the foregoing reasons, the judgment appealed in the tort suit, Dalton R. Morgan v. Lumbermen's Mutual Casualty Company and Mark N. Adams is reversed and judgment is now rendered in favor of defendants, appellants rejecting the plaintiff's demands and dismissing his suit. Further, in that suit, the judgment in favor of the "third party plaintiff," United States Fidelity and Guaranty Company and against the "third party defendants, Lumbermen's Mutual Casualty Company and their insured" is reversed and the demand now rejected and dismissed. Further, in that proceeding, the judgment dismissing the reconventional demand of Lumbermen's Mutual Casualty Company is affirmed. All costs in that proceeding are assessed against Dalton R. Morgan, plaintiff and United States Fidelity and Guaranty Company, "third party plaintiff."
In the workmen's compensation suit, Dalton R. Morgan v. United States Fidelity and Guaranty Company, et al, the judgment appealed is affirmed except insofar as it decrees credit for sums received by the plaintiff from Lumbermen's Mutual Casualty Company or Mark N. Adams, which said portion of the judgment is annulled and deleted. In all other respects it is affirmed. All at the cost of appellant, United States Fidelity and Guaranty Company.
Reversed in part, affirmed in part.
NOTES
[1] This is the stipulated amount paid in compensation and hospital and medical expenses.
[2] The amount alleged and prayed for was $2,950.
[3] Diana and Sandra Adams were in the Lincoln at the time of the accident. There is no testimony from either in the record before us.